# THE SUPREME COURT

### OF THE

# STATE OF NEVADA

### JULY TERM, 1918

[No. 2264]

VINEYARD LAND AND STOCK COMPANY (A
CORPORATION), PETITIONER AND RELATOR, v. THE
DISTRICT COURT OF THE FOURTH JUDICIAL
DISTRICT OF THE STATE OF NEVADA, IN
AND FOR THE COUNTY OF ELKO, AND HON-
ORABLE E. J. L. TABER, DISTRICT JUDGE OF SAID
DISTRICT COURT, AND W. M. KEARNEY, AS STATE
ENGINEER OF THE STATE OF NEVADA, RESPONDENTS.

[171 Pac. 166]

1. CONSTITUTIONAL LAW—PRESUMPTIONS IN FAVOR OF ACT.
   When a statute is assailed as being unconstitutional, every
   presumption is in favor of its validity, all doubts must be
   resolved in its favor, and, unless it is clearly in derogation of
   some constitutional provision, it must be sustained.

2. CONSTITUTIONAL LAW—CONSIDERATION BY COURTS OF POLICY OF
   LAW.
   The courts, in considering the constitutionality of a statute,
   have nothing to do with the general policy of the law.

3. CONSTITUTIONAL LAW—WATERS AND WATERCOURSES—DUE PRO-
   CESS—NEVADA WATER LAW.
   Water law (Stats. 1913, c. 140), as amended by Stats. 1915,
   c. 253, providing that, subject to existing rights, the water of
   all sources of supply belongs to the public, providing for the
   appointment of a state engineer, to whom application may be
   made to appropriate any unappropriated water in a public
   stream, etc., and providing that the state engineer, on his own
   initiative, or on application of one or more users of water of

VOL. 42—1

any stream, may make an order for the determination of the relative rights of the water users, there being provision for notice, etc., is not violative of federal Const. Amend. 14, prohibiting the taking of property without due process of law.

4. CONSTITUTIONAL LAW—DUE PROCESS—ADHERENCE TO METHODS IN EXISTENCE AT TIME OF ADOPTION OF CONSTITUTION.

It is not the rule in Nevada that there can be no due process of law unless the methods, means, and instrumentalities which were in existence at the time of the adoption of the Nevada constitution are adhered to.

5. CONSTITUTIONAL LAW—WATER LAW—ENCROACHMENT ON JUDICIARY—JURISDICTION OF DISTRICT COURT.

Water Law (Stats. 1913, c. 140), as amended by Stats. 1915, c. 253, providing that, subject to existing rights, the water of all sources of supply belongs to the public, providing for the appointment of a state engineer, to whom application may be made to appropriate any unappropriated water in a public stream, etc., and providing that the state engineer, on his own initiative or on application of one or more users of water of any stream, may make an order for the determination of the relative rights of the water users, there being provision for notice, etc., is not violative of Const. art. 6, sec. 6, providing that the district courts shall have original jurisdiction in all cases which involve the title or the right of possession to, or the possession of, real property, even though a water right is real estate, since the entire proceedings under the water law amount to nothing until a copy of the order of determination of water rights of the state engineer is filed in the office of the clerk of the district court, thus operating as a complaint, the proceedings before the state engineer being nothing more than the routine of preparing and filing the complaint in the district court, which invests the latter court with jurisdiction to act.

6. CONSTITUTIONAL LAW—SEPARATION OF POWERS OF GOVERNMENT— WATER LAW.

Water law (Stats. 1913, c. 140), as amended by Stats. 1915, c. 253, providing that, subject to existing rights, the water of all sources of supply belongs to the public, providing for the appointment of a state engineer, to whom application may be made to appropriate any unappropriated water in a public stream, etc., and providing that the state engineer, on his own initiative, or on application of one or more users of water of any stream, may make an order for the determination of the relative rights of the water users, there being provision for notice, etc., is not violative of Const. art. 3, sec. 1, and art. 6, sec. 1, providing that the powers of government shall be divided into three separate departments, the legislative, executive, and judicial, etc., and that the judicial power of the state shall be vested in a supreme court, district courts, and justices of the peace, the act not conferring judicial powers on the state engineer, since the procedure before him merely paves the way for an adjudication by the district court.

7. Eminent Domain—Compensation—Public Use—Water Law.

Water law (Stats. 1913, c. 140), as amended by Stats. 1915, c. 253, providing that, subject to existing rights, the water of all sources of supply belongs to the public, providing for the appointment of a state engineer, to whom application may be made to appropriate any unappropriated water in a public stream, etc., and providing that the state engineer, on his own initiative, or on application of one or more of the users of water of any stream, may make an order for the determination of the relative rights of the water users, there being provision for notice, etc., is not violative of Const. art. 6, sec. 1, providing that private property shall not be taken for public use without just compensation, since the law does not contemplate or suggest the taking of private property for any public or any other use.

8. Waters and Watercourses — Constitutionality of Water Law — Distribution of Water — Determination of State Engineer.

Water law (Stats. 1913, c. 140), sec. 33, as amended by Stats. 1915, c. 253, sec. 3, providing that from and after the filing of the state engineer's order of determination with the clerk of the district court, and during the hearing thereon, the waters of the stream in question may be distributed as indicated in the order of determination, unless a stay bond be given, is not unconstitutional.

9. Constitutional Law—Vested Rights.

No person has a vested right in any rule of law, nor can any one assert a vested right in any particular mode of procedure.

10. Constitutional Law—Due Process—Water Law.

Water law (Stats. 1913, c. 140), as amended by Stats, 1915, c. 253, is not unconstitutional, as permitting a taking of property without due process of law, in that, should an interested party fail to file objections, to the determination of the state engineer as to water rights, with the clerk of the district court in which the engineer files a copy of his order of determination, and the court enters a decree in accordance with such order, such decree will be tantamount to a taking of property without due process.

Petition for prohibition, on the relation of the Vineyard Land and Stock Company, a corporation, against the District Court of the Fourth Judicial District of the State of Nevada in and for the County of Elko, E. J. L. Taber, District Judge of said District Court, and W. M. Kearney, as State Engineer of the State of Nevada. **Alternative writ vacated, and permanent writ denied,** McCarran, C. J., dissenting.

*Charles B. Henderson* and *Carey Van Fleet,* for Petitioner:

All of the sections of the act entitled "An act to provide a water law for the State of Nevada,   *   *   *" (Stats. 1915, c. 253), are unconstitutional, null, and void: (1) as being in violation of the 14th amendment to the Constitution of the United States; (2) as being in violation of article 1, section 8, Constitution of the State of Nevada; (3) as being in violation of article 3, section 1, Constitution of the State of Nevada; (4) as being in violation of article 4, sections 20 and 21, Constitution of the State of Nevada; (5) as being in violation of article 6, sections 1, 4, and 6, Constitution of the State of Nevada; (6) as being in violation of article 4, section 17, Constitution of the State of Nevada.

Said act is inoperative and void, in this: That the title does not express, in any manner, shape or form, the provisions contained in the body of the act; it is so ambiguous and uncertain that it amounts to no title at all; it purports to repeal the water law of 1913 and to amend the water law of 1907, but it is in such shape that it is impossible for this court to ascertain the intention of the legislature in regard thereto. Said title is in violation of article 4, section 17, Constitution of the State of Nevada, as aforesaid.

The water law of 1913 (Stats. 1913, p. 192) was amended by the amendatory act of 1915 (Stats. 1915, p. 378), and is inoperative and void for the reason that since the amendment the remaining sections of the law of 1913 conflict with the amendatory sections of the law of 1915, more particularly as follows: Section 51 of the law of 1913 conflicts with sections 33, 34, 35, and 36 of the amendatory act of 1915, and all of the amendatory sections of the law of 1915 conflict with sections 45 and 46 of the law of 1913.

By the amendatory act of 1915 all right of appeal to this court from the decision of the district court, upon the hearing of the order of determination of the state engineer, is cut off.

The law of 1913 (Stats. 1913, p. 192), as amended by the law of 1915 (Stats. 1915, p. 378), is unconstitutional, null and void, in that sections 18 to 58 and 88a and 88b of said act as amended are unconstitutional, being violative of the sections of the constitution of the United States and the constitution of the State of Nevada heretofore set forth.    The water law of 1913 has been repealed by the amendatory act of 1915, and there is now no water law in force and effect in the State of Nevada.

*Cheney, Downer, Price & Hawkins, Amici Curiæ:*

The water law of 1913, as amended, does not authorize the state engineer to determine and establish the several rights of petitioner, or other appropriators, whose rights to the use of water became vested property rights prior to 1903, or prior to the approval of the water law of 1913, approved March 22, 1913.   The legislative declaration contained in section 1 of said water law of 1913 is insufficient to, and does not, warrant or authorize the acts done and threatened to be done by the state engineer, for the reason that the waters do not belong to the state, but belong to the United States government in its sovereign and proprietary capacity.   If the water law of 1913, as amended, does authorize and empower the state engineer to hear, determine, and establish the several rights and the relative rights of petitioner and other appropriators, all sections and parts of sections— to wit: sections 18 to 39, inclusive, and sections 45, 51, 75, 88a, 88b—are inhibited by and in contravention of the provisions of the federal and state constitutions, and are therefore unconstitutional and void.

"Whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing, or other purposes, have vested and accrued, and the same are recognized and acknowledged by the local customs, laws and decisions of the courts, the possessors and owners of such vested rights shall be maintained and protected in the same."   Fed. Stats. Ann., vol. 7, sec. 9, p. 1090.   Appropriations made in the absence of restrictions cannot be impaired by subsequent legislation, but

such legislation would apply only to appropriations made after and in accordance with such legislation. Coffin .v. Left Hand Ditch Co., 6 Colo. 443; Arnold v. Stevenson, 2 Nev. 234; Haydon v. Board, 2 Nev. 371; O'Neal v. N. Y. M. Co., 3 Nev. 141; State v. Kruttschnitt, 4 Nev. 178; Torreyson v. Board, 7 Nev. 19; Fitch v. Elko Co., 8 Nev. 271; Ex Parte Hewlett, 22 Nev. 333; Palmer v. R. R. Com., 138 Pac. 997. "There are two sets of laws governing the appropriations of water in the State of Oregon: First, those relating to appropriations made prior to the time that the water code went into effect; and, second, those governing appropriations made after it went into effect." Kinney on Irrigation, 2d ed., vol. 4, sec. 1979.

The claim of ownership of all "the water of all sources of water supply," contained in section 2 of the 1913 statute, is the first legislative declaration of the kind. Previous legislatures have been content to say that "all natural watercourses and natural lakes, and the waters thereof, which are not held in private ownership, belong to the state and are subject to appropriation for beneficial uses." Stats. 1907, p. 30; Stats. 1903, p. 24; Stats. 1899, p. 115. "As it appears to us, from all sides of the question, the better rule is to have these rights determined and authoritatively adjudicated in the first instance by the courts. But, paramount above all questions, it is better even to encourage litigation than that a citizen should be deprived of his property unjustly." Kinney on Irrigation, 2d ed., vol. 3, sec. 1595. Title cannot be vested by a mere fiat of law. No property right was acquired by the legislative declaration in the statute. "A state cannot by its legislation restrict the authority of the officers of the land department in the disposition of the public lands of the United States or withhold from the grantees of the United States any of the incidents of the transfer of the government title." Peyton v. Desmond, 129 Fed. 1; Bagnell v. Broderick, 13 Pet. 436, 450; Wilcox v. McConnell, 13 Pet. 498, 516; Irvine v. Marshall, 20 How. 558; Gibson v. Chouteau,

13 Wall. 92; Langdon v. Sherwood, 124 U. S. 74; Paige
v. Peters, 70 Wis. 182; U. S. v. Rio Grande Irr. Co.,
174 U. S. 690; Rossmiller v. State, 124 Wis. 169.

The water law of 1913, as amended in 1915, is uncon-
stitutional. Whether a power is within constitutional
limits is to be determined by what can be done under it,
not by what may be done. "It is no answer to say that
the power would not be arbitrarily or unreasonably
exercised. It must be judged by what can be done
under it, not by what may be done under it." Curtin v.
Benson, 222 U. S. 78; Sterrett & Oberle Packing Co. v.
City of Portland, 154 Pac. 410; Stuart v. Palmer, 74
N. Y. 183.

The determination of vested property rights by the
state engineer is inhibited by the constitution. "The
form of the law by which an individual is deprived of a
constitutional right is immaterial. The test of its con-
stitutionality is whether it operates to deprive any
person of a right guaranteed or given him by the con-
stitution. If it does, it is a nullity—whatever may be
its form." Davies v. McKeeby, 5 Nev. 369.

The proceedings to hear, determine and establish
vested water rights are judicial. Southern Pacific Co. v.
Bartine, 170 Fed. 725; Wattles v. Baker County, 117
Pac. 417; Thorp v. Wollman, 1 Mont. 168; Pacific Coast
C. Co. v. Pillsbury, 153 Pac. 24; Farm. Inv. Co. v.
Carpenter, 61 Pac. 258; People v. Mallory, 63 N. E. 508;
In Re Dunford, 53 Pac. 92; Fitch v. Board, 94 N. W.
952; People v. Dunn, 52 N. E. 572; Witter v. Cook
County Comm., 100 N. E. 148; State v. Blaisdell, 132
N. W. 769; State v. Brill, 111 N. W. 294.

The water law violates the due-process-of-law provi-
sions of the constitution of Nevada, as construed and
defined by the supreme court. To hear, determine and
establish that one party is not entitled to property which
he claims, and that another party claiming is entitled
thereto, is to determine and establish title or right of
possession to, or the possession of, such property so
involved and so determined and established. Gibson v.

Mason, 5 Nev. 283; Wright v. Cradlebaugh, 3 Nev. 341; Persing v. Reno B. Co., 30 Nev. 342; Bear Lake County v. Budge, 75 Pac. 614; State v. Guilbert, 47 N. E. 551; People v. Simon, 52 N. E. 910; Brown v. Board, 50 Miss. 468.

*Geo. B. Thatcher,* Attorney-General, and *W. M. Kearney,* for Respondents:

The "State Water Law," in controversy in this proceeding, is found in full in chapter 140, Statutes of Nevada, 1913, page 192, and in the amendments thereto at chapter 253, Statutes of Nevada, 1915, page 378. Sections 1 to 17, inclusive, may be called general provisions with reference to the use and appropriation of water, storage, standards of measurements, measurements, and the creation of the office of state engineer. Sections 18 to 51, both inclusive, may for convenience be called the adjudication provisions of the act, and have for their purpose the ultimate adjudication of all water rights upon any given stream system of all appropriators thereon. Sections 52 to 58 provide for the administration and regulation of the use of water through the office of the state engineer and through various water commissioners. Section 59, and all the other sections of the act, in substance, provide and regulate the method of making new appropriations of water, changes of points of diversion, general fees, etc. This section brings into controversy the constitutionality of the provisions of sections 18 to 51, both inclusive, the adjudication provisions of the act. Generally stated, these provisions provide a complete system for the determination of the relative rights of all claimants upon all of the streams and stream systems of the state, having for its ultimate purpose a final adjudication, which will definitely determine and fix the title and right of every water user.

If the state, in the exercise of its police power, is to regulate the distribution to appropriators, it is essential that the relative rights of the various water users upon

a stream or stream system must be ascertained and definitely fixed. Under supervision of the state, no control under its police power and no regulation of the distribution and use would be effective without first making some determination of the relative rights, and this power of regulation and control is clearly within the scope of the police power of the state. Farmers I. Ditch Co. v. Agricultural Ditch Co., 45 Pac. 444; Louden Irr. Co. v. Handy Ditch Co., 43 Pac. 535; White v. Farmers H. C. & R. Co., 31 L. R. A. 828; Anderson v. Kearney, 37 Nev. 314, 336, 337, 338.

The act does not violate the due-process clause of the fourteenth amendment to the constitution of the United States or the due-process clause of the constitution of Nevada, article 1, section 8. Weil on Waters, 3d ed., secs. 1227, 1228, p. 1135; Spear v. Stephenson, 102 Pac. 367–372; Farm Investment Co. v. Carpenter, 50 L. R. A. 744, 761; Anderson v. Kearney, supra; Pacific Livestock Co. v. Lewis, 217 Fed. 95.

The act does not violate section 1, article 3, of the constitution of Nevada, providing for the distribution of the powers of the state government (Sawyer v. Dooley, 21 Nev. 390, 396; Anderson v. Kearney, supra), nor is it in violation of sections 20 and 21. This has been too often decided to merit discussion. The law applies equally to all appropriators of water and to all stream systems of the state, and to all actions brought under the act, and the statute is neither a special law nor class legislation within the constitutional inhibitions. Youngs v. Hall, 9 Nev. 212; State v. Mining Co., 15 Nev. 234; State v. Mining Co., 16 Nev. 432; State v. State Bank and Trust Co., 37 Nev. 456; Sawyer v. Dooley, 21 Nev. 391; Southern Pacific Co. v. Bartine, 170 Fed. 725; Mo. Pac. Co. v. Mackey, 127 U. S. 205; Chicago R. R. Co. v. Arkansas, 219 U. S. 453.

The act is not violative of the provisions of article 6 of the constitution of Nevada. Farm Investment Co. v. Carpenter, supra; Crawford Co. v. Hathaway, 67 Neb.

325; State v. State Bank and Trust Co., 31 Nev. 456; Anderson v. Kearney, supra. The distribution and regulation of the use of water on a stream system pending the hearing in the district court is made in accordance with the order of the state engineer, but it becomes only prima facie correct, and distribution is made only in accordance therewith when filed in the court. So long as it remains in the hands of the state engineer it amounts to nothing so far as it vests or divests the rights of any appropriator, or regulates or controls the disposition, distribution and use of water. Furthermore, the order of determination made by the state engineer and the hearings and proceedings provided by the statute preliminary thereto are not "cases in equity" or "cases at law" as those terms are used in the state constitution. Anderson v. Kearney, supra; In Re Silvies River, 199 Fed. 499; Pacific Livestock Co., v. Lewis, supra.

It is contended that the State of Nevada has no right or authority to pass the act in question, for the reason that the government of the United States is the owner of all lands and water embraced and lying within the boundaries of the state, having come into the same under the treaty between the United States and Mexico in 1848. This contention is not tenable. The ownership of the United States of the public lands in the various western states is not that of a sovereign; it is proprietary only, standing in the same position with reference to ownership and rights as any private individual. U. S. v. R. R. Co., 27 Fed. Cas. 686, Fed. Case No. 16114; Moore v. Smaw, 17 Cal. 199; People v. Shearer, 30 Cal. 645. A grant from the United States of its public lands bounded on streams or other waters is to be construed according to the laws of the state in which the land lies. Harden v. Jordan, 140 U. S. 371. On the admission of a new state, short lands or tide lands belong to the state. Shiveley v. Bowler, 152 U. S. 1. The right of the United States to the public lands and the power of sale in Congress confers no right to grant lands on the banks of the Mobile River which were below high-water mark

at the time Alabama was admitted into the Union. Pollard v. Hagan, 3 How. 212. California, by virtue of its admission to the Union, became the owner of the navigable rivers and the soil under same. Mumford v. Wardwell, 6 Wall. 423. In the state is vested the waters of natural streams; but, even if that were not the law, the government of the United States has specifically recognized the rights of legislatures to regulate and control the waters of natural streams within their boundaries. Act 1866, 14 U. S. Stats. at Large, 2551. "It is very evident that Congress intended, although the language used is not happy, to recognize as *valid* the customary law with respect to the use of water, which has grown up among the occupants of the public lands under the peculiar necessities of their condition, and that law may be shown by evidence of the local custom, or by the legislation of the state or *territory* or the decisions of the court." Basey v. Gallagher, 87 U. S. 670, 683.

By the Court, Coleman, J.:

This is a proceeding in prohibition. It appears from the petition that the state engineer, upon the application of petitioner, initiated proceedings under the water law (Stats. 1913, p. 192, as amended by Stats. 1915, p. 378) of this state, to determine, for administrative purposes the relative rights of the appropriators of the water of the Salmon River and its tributaries, situated in Elko County, Nevada.

After the preliminary steps provided for in the statute had been complied with by the state engineer, and after a copy of the order of determination made by him establishing the relative rights of appropriators of the water of said stream had been filed in the office of the clerk of the district court of Elko County, and after an order had been made by that court fixing a time for hearing upon such order of determination, these proceedings were instituted to prohibit said court from proceeding with such hearing or taking any action whatever in the matter.

The act in question provides that, subject to existing

rights, the water of all sources of supply belongs to the public, and makes provision for the appointment of a state engineer, to whom application may be made to appropriate any unappropriated water in a public stream. It is provided also that the state engineer may, on his own initiative, or upon the application of one or more users of water of any stream in the state, make an order for the determination of the relative rights of the water users of such stream; and by section 19 of the act it is made the duty of the state engineer to publish for four weeks notices of such order and the date when examination of the rights of water users will begin, and notify all claimants of rights in the water of the stream to make proof of their claims. Sections 20 and 21 provide for an independent investigation by the state engineer and the making of surveys and maps. Section 22 provides that after such investigation is made, and maps, etc., are filed, the state engineer shall give notice, by publication and by registered mail, of the commencement of the taking of proofs by him and of the date prior to which the same must be filed. Section 33 of the amendatory act provides for the making by the state engineer of an order determining the relative rights to the waters of the stream, a certified copy of which, together with the original evidence, shall be filed with the clerk of the district court, whereupon the court shall make an order, fixing a time for a hearing upon such order of determination, which the state engineer shall cause to be published for four consecutive weeks in one or more newspapers, and a copy of which he shall send, by registered mail, to each party in interest. Interested parties may, pursuant to the act, five days prior to the day set for hearing by the court, file with the clerk of the court exceptions to the order of determination made by the state engineer. Section 35 of the amendatory act also provides:

"The order of determination by the state engineer and the statements or claims of claimants and exceptions made to the order of determination shall constitute the

pleadings, and there shall be no other pleadings in the cause. If no exceptions shall have been filed with the clerk of the court as aforesaid, then on the day set for the hearing, on motion of the state engineer, or his attorney, the court shall enter a decree affirming said order of determination. On the day set for hearing all parties in interest who have filed notices of exceptions as aforesaid shall appear in person or by counsel, and it shall be the duty of the court to hear the same or set the time for hearing, until such exceptions are disposed of, and all proceedings thereunder shall be as nearly as may be in accordance with the rules governing civil actions."

Section 38 of the amendatory act reads:

"From and after the filing of the order of determination, evidence, and transcript with the county clerk as aforesaid, and during the time the hearing of said order is pending in the district court, the division of water from the stream involved in such determination shall be made by the state engineer in accordance with said order of determination."

The operation of said order of determination may be stayed, in whole or in part, by the giving of a bond in an amount to be fixed by the judge of the district court.

The foregoing statement of the water law, together with such other provisions as we may call attention to in this opinion, are, we think, sufficient for a full understanding of the questions involved in this case.

The questions presented in this matter are not new; in fact, we think it may be said that the law involved is well settled adversely to the contention of the petitioner. The purposes of the water law were fully set forth by Norcross, J., in Ormsby County v. Kearney, 37 Nev. 314, 142 Pac. 803, where the statute of 1913 (before amendments) was considered, and we will not undertake to restate them at length, contenting ourselves by saying generally that the moving cause therefor was to provide a method whereby unappropriated water might be appropriated, and whereby the relative rights of existing

appropriators of the waters of the public streams of the state might be determined without great delay and expense to such appropriators, and to enable the state to supervise and administer the distribution of such waters so that the greatest good might be attained therefrom for the development of our agricultural resources.

In approaching the consideration of this case, we wish to say that the main questions upon which this decision must turn were considered and determined in the interpretation of similar laws, from which ours was chiefly taken, in the following cases: In Re Willow Creek, 74 Or. 592, 144 Pac. 507, 146 Pac. 475; Pacific Live Stock Co. v. Lewis (D. C.) 217 Fed. 95; Id., 241 U. S. 440, 36 Sup. Ct. 637, 60 L. Ed. 1084; Farm. Inv. Co. v. Carpenter, 9 Wyo. 110, 61 Pac. 258, 50 L. R. A. 747, 87 Am. St. Rep. 918; Enterprise Irr. Dist. v. Tri-State Land Co., 92 Neb. 121, 138 N. W. 171. And the statutes now under consideration were ably and exhaustively analyzed in the case of Bergman v. Kearney (D. C.) 241 Fed. 884. Just here we may well say, as did the learned judge in Pacific Live Stock Co. v. Lewis (D. C.) 217 Fed. 95, but with added force because of the decision of the Supreme Court of the United States in the same case, supra, and the decision in the Bergman case, supra, "it would be mere reiteration to attempt to add anything to what has already been said on this subject."

1, 2. Nor would it be out of place at the threshold of this inquiry to call attention to the well-known canons of construction when a statute is being assailed as being unconstitutional—namely, that every presumption is in favor of the validity of the act, that all doubts must be resolved in its favor, and that unless it is clearly in derogation of some constitutional provision, it must be sustained. It is also a well-known rule that the courts have nothing to do with the general policy of the law.

3. We will first consider the contention that the water law of 1913, as amended in 1915, is unconstitutional in that it is in violation of the fourteenth amendment to the federal constitution, prohibiting the taking of property

without due process of law. As stated, NORCROSS, J., set forth at length, in the case of Ormsby County v. Kearney, supra, the purpose of the 1913 statute, and held that in so far as the same was administrative it was valid, and in this view TALBOT, C. J., concurred; but it was also held in that case that, since that statute sought to make the determination of the state engineer conclusive, subject to the right of appeal, and since no appeal could be taken because of constitutional limitations, that portion of the act providing for an appeal was unconstitutional; hence the amendment of 1915, which provided for a course of procedure in the district court, by the state engineer, almost identical with the procedure which is provided for by the Oregon statute.

As we understand the contention of counsel, it is that that portion of the act which provides for the procedure by the state engineer from the time of the filing by him of a copy of his order of determination with the clerk of the district court is void as not being due process of law. It certainly cannot be said that this law is in violation of the constitutional provision mentioned because of failure to provide for the giving of ample notice to all interested parties, for we doubt if in the history of legislation an act was ever passed in which so many safeguards were provided that a man might not be deprived of his property in a proceeding without knowledge of such proceeding being brought to his attention. The first notice of the proceedings under the water law is the publication for four weeks of an order granting a petition for the determination of the relative rights of the users to the waters of a public stream, and of a time when the state engineer will begin to make examinations. This is followed by proceedings under section 22 of the act, which provides for the publication of notice of the taking of testimony before the state engineer, and in addition thereto requires him to serve upon each interested party personally a copy of such notice, or else to send it by registered mail; and after the taking of testimony before the state engineer is completed, and an order of

determination of the water rights has been made by him, and a copy thereof filed with the clerk of the district court, that court must make an order fixing the time for the hearing upon such order of determination. The order fixing the time of the hearing before the court must be published in one or more newspapers once a week for four consecutive weeks, and a copy thereof must also be sent by registered mail to each of the parties whose interests can be affected by such proceedings.

Thus far it will be seen that, before a final decree can be entered by the court in the matter, an interested party, who is known, gets five different notices of the proceedings before a decree is entered, whereas in an ordinary action to quiet title to real estate a defendant receives only one notice of the pendency of the suit. But, so that by no possible chance may a final decree affecting a person's water right to his detriment be entered, it is further provided by section 13 that any person who has not been served, and who has had no actual knowledge of the pendency of the proceedings, may, at any time within six months from the entry of the decree of the court, petition the court for relief. Thus it would seem that the legislature took every precaution conceivable to prevent a final decree being entered, affecting detrimentally the rights of an interested party, without first giving him actual notice; for, as provided by the statute, the water is distributed in accordance with the order of determination of the state engineer as soon as a copy thereof is filed in the office of the clerk of the district court, unless a bond is given to stay such distribution, in which event the stay is probably effective as to the party giving the bond only. Surely if the order of determination and the distribution of the water in accordance therewith is a violation of the rights of any person, it will not take him long to learn that he is being deprived of his water, especially if it be during the irrigating season; and, if any contest whatever is made in the district court, it is more than likely that no decree could be entered in less than six

months from the time of the filing by the state engineer
of his order of determination, in which event, and with
six months therefrom in which to petition for relief,
it will be seen that at least one irrigating season will
have passed before the time will have expired for those
who had no actual knowledge of the pendency of such
proceeding to petition for relief. If no contest is made,
such person will have about seven months from the time
when the right of distribution accrued. Hence we see
the remote possibility of the passing of the six-month
period after the entry of the decree of distribution with-
out actual notice thereof being brought to the knowledge
of an interested party.

We have already mentioned certain decisions which
we think are controlling upon the questions involved in
the case at bar. To our mind, we might well base our
conclusion upon the decisions cited growing out of the
Oregon statute and the Bergman case, supra, without
giving further attention to the points urged. As we
understand the contention of the learned counsel who
have appeared to assail the constitutionality of the water
law of Nevada, it is not claimed that the decisions con-
struing the Oregon statute are not sound, but that they
are not controlling because, as urged, the Oregon con-
stitution empowers the legislature of that state to create
a tribunal to take jurisdiction over just such proceed-
ings as provided for in the Oregon water code, and that
it is by virtue of such a constitutional provision that
the water board in Oregon acquired jurisdiction to
act, while in Nevada the constitution (art. 6, sec. 1)
limits the judicial authority to certain designated courts,
whereas the water law undertakes to confer judicial
authority upon the state engineer. Conceding that there
is such a constitutional provision in Oregon as contended,
certainly petitioner ought not to be able to find comfort
in that fact, for the reason that no contention was made
in the Oregon case that the statute in question was valid
because of such provision. On the other hand, the law
was assailed upon the identical ground here urged, as

pointed out in the opinion of the court, where it was said that it was contended that the Oregon statute *"undertakes to vest judicial power in a tribunal and officers not recognized by the constitution* (italics ours)." In Re Willow Creek, supra. We think this should suffice to show the utter lack of force of the contention. The opinion in that case turned upon the point that the duties imposed upon the water board were not judicial in character, but at most were only quasi-judicial; the court saying:

"The statute prescribing the duties to be performed by the water board and its members in their respective official capacities in a determination of water rights does not confer judicial powers or duties upon the board or such officers in any sense as indicated by the constitution. Their duties are executive or administrative in their nature. In proceedings under the statute the board is not authorized to make determinations which are final in character. Their findings and orders are prima facie final and binding until changed in some proper proceeding. The findings of the board are advisory rather than authoritative. It is only when the courts of the state have obtained jurisdiction of the subject-matter and of the persons interested, and rendered a decree in the matter determining such rights, that, strictly speaking an adjudication or final determination is made. It might be said that the duties of the water board are quasi-judicial in their character. Such duties may be devolved by law on boards whose principal duties are administrative."

Not only the cases growing out of the Oregon law, but all other cases growing out of similar statutes, have held that the powers conferred upon the official designated under the statute to supervise and administer the laws were, at most, quasi-judicial. Such was the holding in Farmers' Inv. Co. v. Carpenter, supra, where it is said:

"The determination required to be made by the board is, in our opinion, primarily administrative rather than judicial in character. The proceeding is one in which a

claimant does not obtain redress for an injury, but secures evidence of title to a valuable right, a right to use a peculiar public commodity. That evidence of title comes properly from an administrative board, which, for the state in its sovereign capacity, represents the public, and is charged with the duty of conserving public as well as private interests. The board, it is true, acts judicially, but the power exercised is quasi-judicial only, and such as, under proper circumstances, may appropriately be conferred upon executive officers or boards. The jurisdiction bears some resemblance to that of the land department of the government concerning the disposal of the public lands. That department is not regarded as a court, or as a branch of the judicial department; nor is its jurisdiction upheld upon the basis of any authority residing in Congress to establish courts. It is considered as an administrative department, and its powers are held to be quasi-judicial only. Orchard v. Alexander, 157 U. S. 372, 15 Sup. Ct. 635, 39 L. Ed. 737. There exists the same partial resemblance to the state board of land commissioners of our own state. State v. State Board of Land Commrs., 53 Pac. 292, 7 Wyo. 478. We are not persuaded that the act is void as conferring judicial power upon the board in violation of the constitution."

But it is urged that that decision was of no weight in determining the question before the court, for the reason that the Wyoming constitution authorized the creation of a tribunal with power to adjudicate water rights. The Wyoming constitution (art. 8, sec. 2) on that point reads: "There shall be constituted a board of control, to be composed of the state engineer, and superintendents of the water divisions; which shall, under such regulations as may be prescribed by law, have the supervision of the waters of the state and of their appropriation, distribution and diversion, and of the various officers connected therewith. Its decisions to be subject to review by the courts of the state."

So far as we are able to see, there is nothing in that

section of the Wyoming constitution conferring judicial power upon the board of control. To us it seems clear that the power of the board is limited to the determination of questions of a quasi-judicial nature, such as may arise in the investigation and granting of permits to appropriate unappropriated water in a public stream, and in the supervision and administration of the distribution of the waters of the public streams. There is a wide difference between having authority to supervise and administer and having authority to determine questions involving vested rights. The former may, we think, with propriety, be left to an administrative officer, while the latter is properly a question for the courts.

Furthermore, from another standpoint we see no way of escaping the conclusion stated that no judicial power was vested by the Wyoming constitution in the board of control, for the reason that the constitution itself states just where the judicial power of the state is vested. It reads:

"The judicial power of the state shall be vested in the senate sitting as a court of impeachment, in a supreme court, district courts, justices of the peace, courts of arbitration, and such courts as the legislature may, by general law, establish for incorporated cities or incorporated towns." Const. Wyo. art. 5, sec. 1.

This provision limits the exercise of judicial power to the courts mentioned therein, so we think it must be clear that the distinction sought to be made between the Wyoming statute and our statute because of the fact that we have no provision in our constitution such as article 8, section 2, of the Wyoming constitution is without support. See Bergman v. Kearney, supra. On this point the Supreme Court of Nebraska, in considering a statute similar to ours prior to the amendment of 1915, says:

"In the face of these decisions, it hardly seems necessary to again consider the question, but we have done so, and have examined further authorities. It is a matter of common knowledge that both in the administration

of the laws of the United States and of the several states, boards of individuals, for the purpose of exercising executive or administrative functions, are often compelled to inquire into and determine questions requiring the exercise of powers judicial in their nature. Some of such determinations are often, by virtue of the statutes defining the functions and power of the tribunal, final and decisive, and others are made reviewable by appeal to the courts.  *  *  *  Whether reviewable by the courts or not, the exercise of such powers by tribunals of this nature has seldom been held to be a violation of the constitution in this respect. McGehee, Due Process of Law, 162, 368; Reetz v. Michigan, 188 U. S. 505, 23 Sup. Ct. 390, 47 L. Ed. 563; Gardner v. Bonestell, 180 U. S. 362, 21 Sup. Ct. 399, 45 L. Ed. 574; Bates & Guild Co. v. Payne, 194 U. S. 106, 24 Sup. Ct. 595, 48 L. Ed. 894; People ex rel. Deneen v. Simon, 176 Ill. 165, 52 N. E. 910, 44 L. R. A. 801, 62 Am. St. Rep. 175; Farm Investment Co. v. Carpenter, 9 Wyo. 110, 61 Pac. 258, 50 L. R. A. 747, 87 Am. St. Rep. 918; State v. Thorne, 112 Wis. 81, 87 N. W. 797, 55 L. R. A. 956; Gee Wo v. State, 36 Neb. 241, 54 N. W. 513; Lincoln Medical College v. Poynter, 60 Neb. 228, 82 N. W. 855. We are satisfied with the conclusion reached by this court in the cases cited, which were followed in Farmers' Canal Co. v. Frank, 72 Neb. 136, 100 N. W. 286, and see no reason to change our conclusion in this respect." Enterprise Irr. Dist. v. Tri-State Land Co., 92 Neb. 121, 138 N. W. 179.

But it is contended that since nothing is said in the constitution of Nebraska about irrigation, and since the doctrine of riparian rights existed in Nebraska, the case just quoted from should not be considered as an authority by this court. We fail to see the force of this contention. As we understand the law, unless the state or federal constitution prohibits legislation upon a subject, the power of the legislature is plenary; and the legislature of Nebraska, evidently being of this view, passed an irrigation act. This act was first brought to the attention of the supreme court of that state in the

case of Crawford v. Hathaway, 60 Neb. 754, 84 N. W. 271, where the court gave it scant consideration. On an application for a rehearing, the statute was more fully considered. 61 Neb. 317, 85 N. W. 303. Another rehearing was had in the case, where the full scope of the .act was set out. Upon this rehearing the former opinions were reversed, and it was held that the irriga-tion act was constitutional, but that no vested riparian rights could be violated. 67 Neb. 325, 93 N. W. 781, 60 L. R. A. 889, 108 Am. St. Rep. 647. In that opinion it was also held that as to unappropriated water the act.in question controlled, and that vested riparian rights might be condemned under the right of eminent domain. Following the case just mentioned was the case of Enterprise Irr. Dist. v. Tri-State Land Co., from which we have quoted supra.

We are unable to see the force of the distinction sought to be made between the Nebraska statute and the Nevada statute. The fact is that the constitution of neither of these states has a word to say about irriga-tion, but in Nevada the courts "took the bull by the horns," and in effect *repealed* the doctrine. of riparian rights without awaiting the action of the legislature (Reno Smelting Works v. Stevenson, 20 Nev. 269, 21 Pac. 317, 4 L. R. A. 60, 19 Am. St. Rep. 364), while in Nebraska it was left for the legislature to pass an irrigation act.

The only difference between the constitutions of Wyoming and Nebraska and that of Nevada, so far as to warrant a different conclusion as to the Nevada statute of 1913, is that there is nothing in the constitu-tions of the first two states prohibiting an appeal from the order of distribution made pursuant to the water laws of those states, while in Nevada the constitution prohibits such a proceeding; hence, since the amend-ment of 1915, the reasoning and logic of the Wyoming and Nebraska cases apply with full force to the situation now presented to us.

It is also contended, if we correctly understand coun-sel, that there can be no due process of law except in a

proceeding in court, where summons is regularly issued and served in accordance with the usual practice in actions pending in such tribunals. While we do not deem it necessary to determine this question, for the reason that we think, as will be shown later, that the real proceeding wherein an adjudication is made is after the proceedings are instituted in the district court, however, as pointed out by Norcross, J., in his opinion in the Ormsby County case, supra, the Supreme Court of the United States, to which we must look for a final interpretation of the federal constitution, took the contrary view. In that case Mr. Justice Norcross quoted from Balch v. Glenn, 85 Kan. 735, 119 Pac. 67, 43 L. R. A. (N. S.) 1080, Ann. Cas. 1913A, 406, as follows:

"It has been held by the Supreme Court of the United States that the phrase 'due process of law' does not necessarily mean a judicial proceeding. McMillan v. Anderson, 95 U. S. 37, 24 L. Ed. 335. On the other hand, it does not necessarily mean a special tribunal created for the express purpose of hearing the merits of the particular controversy. Where ample notice is provided which gives to the property owner an opportunity to have a hearing in any court of competent jurisdiction before his property is affected, he is afforded due process of law."

See, also, Reetz v. Michigan, 188 U. S. 507, 23 Sup. Ct. 391, 47 L. Ed. 563; 8 Cyc. 1084; 6 R. C. L. p. 459.

4. Counsel seem to labor under the impression that there can be no due process of law unless the methods, means, and instrumentalities which were in existence at the time of the adoption of our constitution are adhered to. Such was never the rule in Nevada, as shown by the opinion in the case of State v. Millain, 3 Nev. 466, where it is said:

"Counsel further insists that a constitutional right of defendant's is violated, because the indictment does not conform to the requirement at common law, and founds his objections on a part of section 8, article 1, of the state constitution, which provides that no person shall

be deprived of life, liberty, or property, without due process of law. The same rights are preserved in article 5 of Amendments to the Constitution of the United States, which is held to be a restriction of the government of the United States and the proceedings of the federal courts, and does not apply to the state governments. But this is of no moment, as we observe the same provision obtains in the state constitution. It has been universally held, under a like constitutional restriction, that it does not mean 'the process,' or, otherwise expressed, 'the proceeding,' shall be the same as pursued at common law, but that the mode and manner of their procedure may be regulated and prescribed by statute."

A similar rule has also been adopted by the Supreme Court of the United States, as shown in the well-considered case of Hurtado v. State of California, 110 U. S. 516, 4 Sup. Ct. 111, 292, 28 L. Ed. 232, where the question is considered at length. In that case the court quotes approvingly from Rowan v. State, 30 Wis. 129, 11 Am. Rep. 559, as follows:

"But its design was not to confine the states to a particular mode of procedure in judicial proceedings, and prohibit them from prosecuting for felonies by information, instead of by indictment, if they chose to abolish the grand jury system. And the words 'due process of law,' in this amendment, do not mean and have not the effect to limit the powers of state governments to prosecutions for crimes by indictments, but these words do mean law in its regular course of administration according to prescribed forms and in accordance with the general rules for the protection of individual rights. Administration and remedial proceedings must change, from time to time, with the advancement of legal science and the progress of society; and, if the people of the state find it wise and expedient to abolish the grand jury and prosecute all crimes by information, there is nothing in our state constitution * * * and nothing in the fourteenth amendment to

the constitution of the United States which prevents them from doing so."

See, also, 8 Cyc. 1090, and cases cited in note 2.

Without considering the question at greater length, we think the contention of counsel, that the statutes mentioned are in violation of the fourteenth amendment, is fully and completely answered in the opinion in Bergman v. Kearney, supra, wherein the court quotes copiously from the Oregon and federal decisions, and we content ourselves with calling attention to that opinion.

5. But it is said that a water right is real estate, and hence the provisions in the water law of 1913, as amended in 1915, authorizing the proceedings here sought to be prohibited, are in violation of section 6, article 6, of our constitution, wherein it is provided:

"The district courts in the several judicial districts of this state shall have original jurisdiction in all cases in equity; also in all cases at law which involve the title or the right of possession to, or the possession of, real property.   *   *   *"

Conceding for the purposes of this case that a water right is real property, we are unable to see wherein the law in question is in any way in violation of the provision of the constitution which we have quoted. The fact of the matter is that the entire proceedings amount to nothing until a copy of the order of determination of the state engineer is filed in the office of the clerk of the district court. When this document is filed in that office it operates as and has the force and effect of a complaint, and from the time of the filing thereof the water of the public stream concerning which the order is made is divided among claimants according to the terms of such order, unless a bond is given pending a decree of the district court. As said in Pacific Live Stock Co. v. Lewis, 241 U. S. 440, 36 Sup. Ct. 637, 60 L. Ed. 1084:

"A serious fault in this contention is that it does not recognize the true relation of the proceeding before the

board to that before the court. They are not independent or unrelated, but parts of a single statutory proceeding, the earlier stages of which are before the board and the later stages before the court. In notifying claimants, taking statements of claim, receiving evidence, and making an advisory report, the board merely *paves the way for an adjudication by the court* of all the rights involved. As the supreme court of the state has said, the board's duties are much like those of a referee. * * * That the state, consistently with due process of law, *may thus commit the preliminary proceedings* to the board *and the final hearing and adjudication to the court is not debatable.*" (Italics ours.)

If this language means anything, it means that the adjudication—the determination, the decree—is made by the court; and the proceedings before the water board in Oregon, to which the state engineer in Nevada holds relatively the same position, is nothing more than the routine of preparing and filing the complaint in the court, which invests the court with jurisdiction to act.

Suppose the water law had provided that the attorney-general might proceed exactly as it now provides that the state engineer may proceed, up to the point of the making by the state engineer of an order of determination, and in lieu of the proceeding provided under the law as it now stands, from the time of making the order of determination, had provided that the attorney-general should, from the information to be gathered in the same manner as now provided by law, prepare and file in the district court a complaint setting forth substantially the same facts contained in the state engineer's order of determination, and that from the filing thereof the proceedings thereupon should be identically the same as those now contemplated by the water law—would any one insist that any constitutional right would be violated? We think not. Yet, what is the difference between conferring such power upon the state engineer and the attorney-general? We see no difference.

We do not accept radical changes without protest. If

a statute radically different from anything to which we have been accustomed is enacted, the average lawyer becomes alarmed and at once brands it as unconstitutional. Lawyers generally were very much excited and alarmed when the statutes of the various states creating railroad commissions, corporation commissions, industrial insurance commissions, and the like, were enacted. They considered them not only unconstitutional but revolutionary. Lawyers do not feel that way about the matter today, because they have become used to such statutes. We do not wish to be misunderstood as saying that we can make an unconstitutional act constitutional merely by becoming familiar with its workings. We simply desire to impress forcibly our illustration relative to a statute providing for a proceeding by the attorney-general.

We are too prone to view legislation as unconstitutional, unmindful of the fact that, unless a statute violates the letter or spirit of some portion of the constitution, it should be upheld. We think every lawyer and judge in the land could profit by a reading of the magnificent address of Geo. B. Rose, which appears in Case and Comment for October, 1917, in which he says:

"If we undertake to make the constitution a dam to stem the tide of human progress, we may be sure that it will be swept away. It should not be an obstruction. It should be the broad channel, with high and well-defined banks, between which the stream of progress may flow on forever in calm and majestic strength. * * * These hidebound constructions are unnecessary, and they imperil the existence of constitutional government. The constitutional guaranties must be maintained; but the only way to maintain them is to mold them to the requirements of modern civilization. They must be reins to guide the chariot of progress in the road of safety, not barriers across its track."

6. It is also contended that the water law is void because it is in violation of section 1, article 3, and section 1, article 6, of the state constitution. These sections read:

"The powers of the government of the State of Nevada shall be divided into three separate departments—the legislative, the executive, and the judicial; and no persons charged with the exercise of powers properly belonging to one of these departments shall exercise any functions appertaining to either of the others, except in the cases herein expressly directed or permitted." Sec. 1, art. 3.

"The judicial power of the state shall be vested in a supreme court, district courts, and in justices of the peace. The legislature may also establish courts, for municipal purposes only, in incorporated cities and towns." Sec. 1, art. 6.

The point which is made is that the legislature attempted by the terms of the water law to confer judicial powers upon the state engineer, whereas the constitution limits the exercise of such powers to the courts provided for in the constitution. This question was considered at length in the Ormsby County case, supra, in the opinion of NORCROSS, J., where he held that the view now urged was not well taken, though a majority of the court took the contrary view. But, conceding that the conclusion of the majority of the court was correct, the reason which justified such conclusion does not exist under the law as amended in 1915, because, as we have shown, the procedure before the state engineer leading up to the determination by the district court simply "paves the way for an adjudication by the court," and is in no sense a judicial proceeding.

7. It is also urged that the water law is unconstitutional, in that it is in violation of section 8, article 1, of the state constitution, which provides, inter alia, "nor shall private property be taken for public use without just compensation. * * *" We are of the opinion that there is not the least foundation for this contention. Nowhere does the law contemplate or suggest the taking of private property for public or any other use. Section 2 of the water law expressly provides that, subject to *existing* rights, water may be appropriated, while

section 84 expressly prohibits the impairing of vested rights. The sole purpose of the law is to make definite, certain, and secure the rights which have already vested, to provide a method of determining if there is any unappropriated water in the public streams of the state, and, if so, to enable persons desirous of so doing to appropriate the same, and to see that the water is distributed in accordance with the rights of appropriators as they actually exist.

8, 9. It is also suggested by counsel that the act is void because that portion of section 33, as amended, which provides that from and after the filing of the order of determination with the clerk of the district court, and during the hearing thereon, the waters of the stream in question may be distributed as indicated in the order of determination (unless a stay bond be given) is unconstitutional. We are unable to agree with this contention. As said in Pacific Live Stock Co. v. Lewis, 214 U. S. 440, 36 Sup. Ct. 637, 60 L. Ed. 1084:

"The proceeding in question is a quasi-public proceeding, set in motion by a public agency of the state. All claimants are required to appear and prove their claims; no one can refuse without forfeiting his claim; and all have the same relation to the proceeding. It is intended to be universal and to result in a complete ascertainment of all existing rights, to the end: First, that the waters may be distributed, under public supervision, among the lawful claimants according to their respective rights without needless waste or controversy; second, that the rights of all may be evidenced by appropriate certificates and public records, always readily accessible, and may not be dependent upon the testimony of witnesses with its recognized infirmities; and, third, that the amount of surplus or unclaimed water, if any, may be ascertained and rendered available to intending appropriators. Referring to a situation resembling that to which this proceeding is addressed, the Supreme Court of Maine said, in Warren v. Westbrook Manufacturing Co., 88 Me. 58, 66, 33 Atl. 665, 35 L. R. A. 388, 51 Am. St.

Rep. 372: 'To make the water power of economic value, the rights to its use, and the division of its use, according to those rights, should be determined in advance. This prior determination is evidently essential to the peaceful and profitable use by the different parties having rights in a common power. To leave them in their uncertainty—to leave one to encroach upon the other, to leave each to use as much as he can, and leave the other to sue at law after the injury—is to leave the whole subject-matter to possible waste and destruction.' In considering the purpose of the state in authorizing the proceeding the Supreme Court of Oregon said in Re Willow Creek, 74 Or. 592, 613, 617, 144 Pac. 505, 146 Pac. 475: 'To accelerate the development of the state, to promote peace and good order, to minimize the danger of vexatious controversies wherein the shovel was often used as an instrument of warfare, and to provide a convenient way for the adjustment and recording of the rights of the various claimants to the use of the water of a stream or other source of supply at a reasonable expense, the state enacted the law of 1909, thereby to a limited extent calling into requisition its police power. * * * Water rights, like all other rights, are subject to such reasonable regulations as are essential to the general welfare, peace, and good order of the citizens of the state, to the end that the use of water by one, however absolute and unqualified his right thereto, shall not be injurious to the equal enjoyment of others entitled to the equal privilege of using water from the same source, nor injurious to the rights of the public.' "

In view of the character of the proceeding, there is no question but that the legislature could provide that, upon the filing of a certified copy of the order of determination with the clerk of the district court, the waters of the stream system might, from the date of the filing thereof, be distributed according to its terms unless a stay bond be given. But we do not concede that, if the proceeding were not a quasi-public one, calling into requisition the police power of the state, a statute providing for such a proceeding would be unconstitutional. In many cases,

under our practice, the court may, upon the giving of a bond, issue a temporary injunction before summons is served or notice is given to the defendant. The state and municipal corporations generally are, under our statute, exempted from giving bond in certain proceedings in court. No person has a vested right in any rule of law (New York C. R. Co. v. White, 243 U. S. 188, 37 Sup. Ct. 247, 61 L. Ed. 667, L. R. A. 1917D, 1, Ann. Cas. 1917D, 629) ; neither can any one assert a vested right in any particular mode of procedure (Boise Irr., etc., Co. v. Stewart, 10 Idaho, 58, 77 Pac. 25, 321; Lewis's Sutherland Stat. Const., 2d Ed., sec. 674). What sanctity is there in requiring a bond in a proceeding in court that the sovereign people may not, through the legislature, dispense with unless inhibited by the constitution? We know of none, nor do we know of any provision of the constitution which restricts the right of the legislature in that regard.

10. It is contended that, should an interested party fail to file objections with the clerk of the district court in which the state engineer files a copy of his order of determination, and the court enters a decree in accordance with such order of determination, such decree would be tantamount to a taking of property without due process of law. If what we have said of the character of the proceedings up to and including the filing of the copy of the order of determination with the clerk of the district court is sound, we fail to see wherein an interested party who fails to file such exceptions would be in a worse position than the defendant in the ordinary suit in the district court who fails to plead when duly summoned, and against whom a default judgment is entered. Yet no one would contend that such default judgment, in the ordinary suit, would be equivalent to taking property without due process of law.

It is suggested also that certain other sections of the water law are unconstitutional. The sections mentioned are independent, and, whether constitutional or unconstitutional, can in no way affect the result upon this hearing. When the constitutionality of these sections is

presented in an action in which the determination of their validity is essential to a disposition of the case, we will consider and dispose of the question involved.

We are constrained to say that, in view of the fact that the state engineer initiated the proceedings now sought to be restrained upon petition of applicant for this writ, the question arises whether we would not be justified in denying the writ without passing upon its merits; but, in view of the statewide importance of the attack upon the constitutionality of the water law, we have decided to dispose of the matter upon its merits.

It is ordered that the alternative writ of prohibition heretofore issued in this matter be vacated, and that the permanent writ asked for be denied.

Sanders, J.: I concur.

McCarran, C. J., dissenting:

I dissent.

Inasmuch as this case was originally assigned to the writer to prepare the opinion of the court, we have transformed our original draft into this dissenting opinion, adding thereto such observations as we deem proper in view of the attitude of the prevailing opinion.

This is an original proceeding in prohibition. From the petition it appears that the state engineer, proceeding under the water law of this state as enacted in 1913 and as amended in 1915, has made and filed with the clerk of the district court of Elko County a certain order of determination, establishing certain water rights, or rights to the use of water on the Salmon River and its tributaries, among which are the water rights of petitioner.

Petitioner alleges that it and its predecessors in interest, being the owners of large tracts of land along the Salmon River, have acquired and maintained vested rights to the use of water upon these lands, and such acquisition was made prior to the enactment of a statute creating the office of state engineer and defining his

powers and duties.  As a basis for the petition, the unconstitutionality of the statute of 1913 and 1915 is declared.  The statute itself contains some eighty-odd sections, many of which are not involved in the proceedings here.  I shall limit my consideration in this dissenting opinion to those sections of the statute which by reason of the nature of the proceedings are directly involved.  The reply to the petition for the writ admits the act of the state engineer in filing his orders of determination with the clerk of the district court.  Hence that order of determination, the manner in which it was brought about, its force and effect, are the subjects of inquiry.  For this purpose we review and set up certain sections of the statute, some of which, although disconnected or having intervening sections, must be considered together inasmuch as they operate jointly.

Section 29 provides:

"Should any person claiming any interest in the stream system involved in the determination of relative rights to the use of water, whether claiming under vested title or under permit from the state engineer, desire to contest any of the statements and proof of claims filed with the state engineer by any claimant to the waters of such stream system, as herein provided, he shall, within twenty days after said evidence and proofs, as herein provided, shall have been opened to public inspection, or within such further time as for good cause shown may be allowed by the state engineer upon application made prior to the expiration of said twenty (20) days, in writing notify the state engineer, stating with reasonable certainty the grounds of the proposed contest, which statement shall be verified by the affidavit of the contestant, his agent or attorney.  * * *"

Section 30, as amended by the act of 1915, is as follows:

"The state engineer shall fix a time and place for the hearing of said contest, which date shall not be less than thirty (30) days nor more than sixty (60) days from the date the notice is served on the persons who are parties to the contest.  Said notice may be sent by registered

mail to the person, and the receipt thereof shall constitute valid and legal service. Said notice may also be served by the state engineer, or by any person qualified and competent to serve subpenas as in civil actions, appointed by him, and returns thereof made in the same manner as in civil actions in the district courts of the state. The state engineer shall have power to adjourn hearings from time to time upon reasonable notice to all parties interested, and to issue subpenas and compel the attendance of witnesses to testify at such hearings, which shall be served in the same manner as subpenas issued out of the district courts of the state. He shall have the power to administer oaths to witnesses. In the case of neglect or refusal on the part of any person to comply with any order of the state engineer or any subpena, or cn the refusal of any witness to testify to any matter regarding which he may be lawfully interrogated, it shall be the duty of the district court of any county, or any judge thereof, on application of the state engineer, to issue attachment proceedings for contempt, as in the case of disobedience of a subpena issued from such court, or a refusal to testify therein. Said witnesses shall receive fees as in civil cases, the costs to be taxed in the same manner as in civil actions in this state. The evidence in such proceedings shall be confined to the subjects enumerated in the notice of contest and answer and reply, when the same are permitted to be filed. All testimony taken at such hearings shall be reported and transcribed in its entirety."

Section 33, as amended by the act of 1915, provides:

"As soon as practicable after the hearing of contests, it shall be the duty of the state engineer to make, and cause to be entered of record in his office, an order determining and establishing the several rights to the waters of said stream; *provided, however,* that within sixty days after the entry of an order establishing water rights, the state engineer may, for good cause shown, reopen the proceedings and grant a rehearing. Such order of determination shall be certified to by the state

engineer, and as many copies as required printed in the state printing office. A copy of said order of determination shall be sent by registered mail, or delivered in person, to each person who has filed proof of claim, and to each person who has become interested through intervention or as a contestant under the provisions of section 26 or section 29 of this act."

Section 34, as amended by the act of 1915, has to do with the filing of the order of determination made by the state engineer. It is as follows:

"As soon as practicable thereafter a certified copy of the order of determination, together with the original evidence and transcript of testimony filed with, or taken before, the state engineer, as aforesaid, duly certified by him, shall be filed with the clerk of the county, as ex officio clerk of the district court, in which said stream system is situated, or, if in more than one county but all within one judicial district, then with the said clerk of the county wherein reside the largest number of parties in interest. But if such stream system shall be in two or more judicial districts, then the state engineer shall notify the district judge of each of such judicial districts of his intent to file such order of determination, whereupon, within ten days after receipt of such notice, such judges shall confer and agree where the court proceedings under this act shall be held and upon the judge who shall preside, and on notification thereof the state engineer shall file said order of determination, evidence, and transcripts with the clerk of the court so designated; *provided,* that if such district judges fail to notify the state engineer of their agreement, as aforesaid, within five days after the expiration of such ten days, then, and in that event, the state engineer may file such order of determination, evidence, and transcript with the clerk of any county he may elect, and the district judge of such county shall have jurisdiction over the proceedings in relation thereto. In all instances a certified copy of the order of determination shall be filed with the county clerk of each county in which such stream system, or any

part thereof, is situated. Upon the filing of the certified copy of said order, evidence, and transcript with the clerk of the court in which the proceedings are to be had, the state engineer shall procure an order from said court setting the time for hearing. The clerk of such court shall immediately furnish the state engineer with a certified copy thereof. It shall be the duty of the state engineer immediately thereupon to mail a copy of such certified order of the court, by registered mail, addressed to each such party in interest at his last known place of residence, and to cause the same to be published at least once a week for four consecutive weeks in some newspaper of general circulation published in each county in which such stream system or any part thereof is located, and the state engineer shall file with the clerk of the court proof of such service by registered mail and by publication. And such service by registered mail and by publication shall be deemed full and sufficient notice to all parties in interest of the date and purpose of such hearing."

Section 35, as amended by the act of 1915, provides:

"At least five days prior to the day set for hearing all parties in interest who are aggrieved or dissatisfied with the order of determination of the state engineer shall file with the clerk of said court notice of exceptions to the order of determination of the state engineer, which notice shall state briefly the exceptions taken, and the prayer for relief, and a copy thereof shall be served upon or transmitted to the state engineer by registered mail. The order of determination by the state engineer and the statements or claims of claimants and exceptions made to the order of determination shall constitute the pleadings and there shall be no other pleadings in the cause. If no exceptions shall have been filed with the clerk of the court as aforesaid, then on the day set for the hearing, on motion of the state engineer, or his attorney, the court shall enter a decree affirming said order of determination. On the day set for hearing all parties in interest who have filed notices of exceptions as aforesaid shall appear in person or by counsel, and it

shall be the duty of the court to hear the same or set the time for hearing, until such exceptions are disposed of, and all proceedings thereunder shall be as nearly as may be in accordance with the rules governing civil actions."

Section 36, as amended by the act of 1915, provides:

"For further information on any subject in controversy the court may employ one or more qualified persons to investigate and report thereon under oath, subject to examination by any party in interest as to his competency to give expert testimony thereon. The court, may, if necessary, refer the case or any part thereof for such further evidence to be taken by the state engineer as it may direct, and may require a further determination by him, subject to the court's instructions. After the hearing, the court shall enter a decree affirming or modifying the order of the state engineer. Upon the hearing the court may assess and adjudge against any party such costs as it may deem just and equitable, or may assess the costs in proportion to the amount of water right allotted. Appeals from such decree may be taken to the supreme court by the state engineer or any party in interest, in the same manner and with the same effect as in civil cases."

Section 38, as amended by the act of 1915, provides:

"From and after the filing of the order of determination, evidence, and transcript with the county clerk as aforesaid, and during the time the hearing of said order is pending in the district court, the division of water from the stream involved in such determination shall be made by the state engineer in accordance with said order of determination."

Section 39, as amended by the act of 1915, provides:

"At any time after the order of determination, evidence and transcript has been filed with the clerk of the court, as aforesaid, the operation of said order of determination may be stayed in whole or in part by any party upon filing a bond in the court wherein such determination is pending in such amount as the judge thereof may prescribe, conditioned that such party will pay all

damage that may accrue by reason of such determination not being enforced, pending decree by said court. Immediately upon the filing and approval of such bond, the clerk of the court shall transmit to the state engineer a certified copy of such bond, which shall be recorded in the records of his office, and he shall act in accordance with such stay."

Section 45 of the act is as follows:

"In any suit which may be brought in any district court in the state for the determination of a right or rights to the use of water of any stream, all persons who claim the right to use the waters of such stream and the stream system of which it is a part shall be made parties. When any such suit has been filed, the court shall, by its order duly entered, direct the state engineer, to furnish a complete hydrographic survey of such stream system, which survey shall be made as provided in section 20 of this act, in order to obtain all physical data necessary to the determination of the rights involved. The cost of such suit, including the costs on behalf of the state and of such surveys, shall be charged against each of the private parties thereto in proportion to the amount of water right allotted. In the case of any such suit now pending or hereafter commenced the same may at any time after its inception, in the discretion of the court, be transferred to the state engineer for determination as in this act provided."

Section 84 declares:

"Nothing in this act contained shall impair the vested right of any person to the use of water, nor shall the right of any person to take and use water be impaired or affected by any of the provisions of this act where appropriations have been initiated in accordance with law prior to the approval of this act. Any and all appropriations, based upon applications and permits now on file in the state engineer's office, shall be perfected in accordance with the laws in force at the time of their filing."

Stats. 1913, p. 192; Stats. 1915, p. 378.

Dwelling now on these statutory provisions as we find

them, and especially these sections, inasmuch as they are the sections directly involved, we may inquire: With what does this statute deal? It deals with that vested estate which one may acquire by diverting water from a public stream and applying the same to a beneficial use. This is commonly termed a water right.

By reason of the nature of the soil and the climatic conditions attendant in western arid and semiarid states, it has been recognized, and rightfully so, that the waters of the public streams are indispensable to the land, the productiveness of the whole depending entirely, as it does, upon the beneficial application of the former. This being true, the land and the water as beneficially applied thereto must be, and indeed have been by courts and textwriters, regarded as one by reason of their correlation. Property in land acquires its value and importance, its very life in regions such as that encompassed by this state, from the application of water. A vested right to divert the waters from a public stream and apply them to a beneficial use in the way of irrigation applies to and is of the very nature of the realty itself. A deprivation of the land made valuable by the application of water diverted from a public stream would no more affect the property rights of the individual than would the deprivation of the water itself by reason of which the value of the estate was acquired and without which it would be worthless.

In the case of Conant v. Deep Creek & C. Valley Irrigation Co., 23 Utah, 627, 66 Pac. 188, 90 Am. St. Rep. 721, the supreme court of that state declared in effect that an action to ascertain, determine, and decree the extent and priority of water rights partakes of the nature of an action to quiet title to real estate. The same court, in the case of Taylor v. Hulett, 15 Idaho, 265, 97 Pac. 37, 19 L. R. A. (N. S.) 535, held that a water right appurtenant to irrigated land was real property.

The right to the flow and use of water, being a right in a natural resource, was held by the Supreme Court of Colorado, in the case of Travelers' Insurance Co. v.

Childs, 25 Colo. 360, 54 Pac. 1020, to be real estate; and to the same effect will be found Davis v. Randall, 44 Colo. 488, 99 Pac. 322, and Bates v. Hall, 44 Colo. 360, 98 Pac. 3.

In the case of Hill v. Newman, 5 Cal. 445, 63 Am. Dec. 140, the Supreme Court of California held that a justice of the peace, although conferred with jurisdiction to try and determine actions for damages for taking, detaining and injuring personal property, had no jurisdiction over an action for diversion of water because it was an action concerning title to real estate. Holding to the same conclusion, we find the case of Griseza v. Terwilliger, 144 Cal. 456, 77 Pac. 1034.

In the case of Yankee Jim's Union Water Co. v. Crary, 25 Cal. 504, 85 Am. Dec. 145, the Supreme Court of California held that water rights may be held, granted, abandoned, or lost by the same means as a right of the same character issuing out of lands to which a private title exists, saying that:

"The right of the first appropriator may be lost, in whole or in some limited portions, by the adverse possession of another. And when such person has had the continued, uninterrupted, and adverse enjoyment of the watercourse, or of some certain portion of it, during the period limited by the statute of limitations for entry upon lands, the law will presume a grant of the right so held and enjoyed by him."

Supporting this general proposition of law may be found the cases of Lower Kings River Water Ditch Co. v. Kings River & F. C. Co., 60 Cal. 410, and Last Chance Co. v. Emigrant Ditch Co., 129 Cal. 278, 61 Pac. 960. See, also, Hayes v. Fine, 91 Cal. 398, 27 Pac. 772; Stanislaus Water Co. v. Bachman, 152 Cal. 716, 93 Pac. 858, 115 L. R. A. (N. S.) 359.

Mr. Kinney, in his work on Irrigation and Water Rights, summing up the subject, puts it thus:

"It is generally conceded by all the authorities that a water right, or an interest in a water right, is real property, and it is so treated, under all the rules of law

appertaining to such property." Kinney on Irrigation and Water Rights (2d Ed.), vol. 2, p. 1328.

The assertion of the author in this respect is supported by a line of authorities wherein the question has been discussed and determined in nearly every phase.

To the same effect will be found the holding of the courts in the cases of Hough v. Porter, 51 Or. 318, 95 Pac. 732, 98 Pac. 1083, 102 Pac. 728; Town of Sterling et al. v. Pawnee Ditch Extension Co., 42 Colo. 421, 94 Pac. 339, 15 L. R. A. (N. S.) 238; Fisher et al. v. Bountiful City, 21 Utah, 29, 59 Pac. 520.

Mr. Weil, in his work on Water Rights in the Western States (vol. 1), asserts the same general principle.

Our legislature has in but one instance, so far as we are able to ascertain, attempted to define the term "real property," and in that instance they declared that:

"The term 'real property' shall include every estate, interest and right in lands, tenements, and hereditaments, corporeal or incorporeal." Section 6294, subd. 10, Rev. Laws.

In the case of Rickey Land and Cattle Co. v. Miller & Lux, 152 Fed. 11, 81 C. C. A. 207, Judge Wolverton, speaking for the Circuit Court of Appeals for the Ninth Circuit, analyzed the question at hand with a finesse which is to our mind unanswerable, and there the court, after a complete analysis in which he referred to numerous cases supporting the position, held that an appropriation of water from a public stream put to a beneficial use "savors of and is a part of the real estate." Speaking of the nature of the suit, which was in that instance one to determine water rights on the Walker River, the court said:

"The suit, * * * in its purpose and effect, is one to quiet title to realty."

This court, speaking through Mr. Justice HAWLEY, has declared to the same effect, holding that a right to the use of water diverted from a public stream should be regarded and protected as property. Dalton v. Bowker, 8 Nev. 190.

Hence, it may be asserted as the first and major premise of the position which we here take that the subject-matter dealt with by the sections of the act referred to is real property.

The validity of this act is challenged under the several sections of our constitution, as well as under the fourteenth amendment. Article 1, section 8, of our constitution provides, inter alia:

"No person shall be subject to be twice put in jeopardy for the same offense * * * nor be deprived of life, liberty, or property, without due process of law. * * * "

Article 3, section 1, provides:

"The powers of the government of the State of Nevada shall be divided into three separate departments—the legislative, the executive, and the judicial; and no persons charged with the exercise of powers properly belonging to one of these departments shall exercise any functions appertaining to either of the others, except in the cases herein expressly directed or permitted."

Article 4, sections 1 and 6, provide:

"Section 1. The judicial power of this state shall be vested in a supreme court, district courts, and in justices of the peace. The legislature may also establish courts, for municipal purposes only, in incorporated cities and towns."

"Sec. 6. The district courts in the several judicial districts of this state shall have original jurisdiction in all cases in equity; also in all cases at law which involve the title or the right of possession to, or the possession of real property, or mining claims, or the legality of any tax, impost, assessment, toll or municipal fine, and in all other cases in which the demand (exclusive of interest) or the value of the property in controversy exceeds three hundred dollars. * * * They shall also have final appellate jurisdiction in cases arising in justices' courts, and such other inferior tribunals as may be established by law. The district courts, and the judges thereof, shall have power to issue writs of

mandamus, injunction, quo warranto, certiorari, and all other writs proper and necessary to the complete exercise of their jurisdiction.    *    *    *"

The framers of our constitution, judging from the report of debates upon the subject, appear to have been most zealous and careful in the language selected and the terms used in each particular section and article. It was no haphazard selection of provisions thrown together for the purpose of forming the fundamental law for the government of a new state.  Words were selected with regard to their true, usual, and ordinary acceptation and meaning;  and we, in construing and applying these provisions, now may well give these terms the very broadest meaning of which they are susceptible, but none such as would be inconsistent with the spirit and intent of the framers of that organic law.

Mr. Chief Justice Marshall, in the case of Gibbons v. Ogden, 9 Wheat. 1, 6 L. Ed. 23, at page 188, expresses the idea when he says that the framers of the constitution must be understood to have employed words in their natural sense and to have intended what they have said.  The application of this rule would forbid forced or unnatural construction to be put upon the language found in the constitutional provisions.  "This," says Mr. Cooley, "seems so obvious a truism that one expects to see it universally accepted without question; but the attempt is made so often by interested subtlety and ingenious refinement to induce the courts to force from these instruments a meaning which their framers never held, that it frequently becomes necessary to redeclare this fundamental maxim."  Cooley, Constitutional Limitations, p. 93.

In so far as the sections of the water law of this state directly involved in the proceedings in the district court are concerned, and in our attempt to test them under the constitutional provisions, we may be mindful of the rule that we are bound to indulge in the presumption of the validity of the statute, and we should so construe unless we find in the constitution *some specific inhibition*

*which has been disregarded or some express command which has been disobeyed.*

Reluctant as we may be to accept a responsibility wherein by reason of the nature of our duties we may be called upon to nullify the enactment of the legislative branch of the government, the seriousness of that responsibility impresses us all the more with the necessity that we should speak plainly and emphatically, and when we find some specific inhibition of the constitution which has been disregarded or some express command thereof which has been disobeyed, we should adopt no apologetic language, but declare the condition, that the future-may be benefited thereby.

Sections 25, 30, 33, 34, 35, 36, 37, 38, and 39 of the water law as amended seek to deal in a determinative way with the subject of real property. In this and in the results accomplished pursuant to these statutory provisions, has a specific inhibition of the constitution been disregarded, has some express command of the constitution been disobeyed? This is the scope and limit of our inquiry. The identical question here presented was up for consideration before the Federal District Court of the District of Nevada but a short time since (Bergman v. Kearney [D. C.] 241 Fed. 884), and inasmuch as the view expressed there by the learned judge is the apparent inspiration of the prevailing opinion here, we deem both eminently worthy of review.

Certain sections of this act—and to these sections we confine ourselves entirely—would confer upon the state engineer the power to determine in the first instance the title to and the right to possession of real property as such is founded in the use and beneficial application of water diverted from the public streams.

The framers of our constitution, recognizing that some tribunal or arbiter was necessary for the settlement of disputes and controversies having to do with the title to or possession of real property, designated in no uncertain language the district court as created by the constitution to be the tribunal that should have

jurisdiction over such matters. The district court by the express provisions of the constitution (art. 6, sec. 6) is conferred with original jurisdiction of cases in equity, and cases at law "which involve the title or right of possession to or possession of real property."

Sections 29, 30, 33, and 34 of the act provide for the institution, hearing, and determination of a contest, the subject of which is the right of the contestants to a stated appropriation of water. Under these sections the state engineer assumes functions of equal significance to a constituted court. The pleadings are provided for and the issues of fact and law are thereby made. Witnesses are required to testify before the state engineer. The subject-matter of the action is the independent, usufructuary estate in the use of water. Vested rights are set up and their validity passed upon by the state engineer. An order is made and caused to be entered of record by the engineer "determining and establishing" these rights, vested or otherwise. The order of the state engineer thus made becomes effective against the property of the parties contestant immediately on its being filed with the clerk of the district court. This is the original or initial proceeding involving property of the highest order. Is the function judicial? Is it "the exercise of that portion of judicial authority appertaining to or belonging to the judicial department? Bergman v. Kearney, supra. It is not necessary for this court to answer this query. The organic law (sec. 6, art. 6) answers far above our power to add or detract. It is the exercise of that portion of judicial authority belonging originally to the district court.

By section 35 the district court, the constituted court of original jurisdiction, is made a court of review only. The order of determination having already been made and filed by the state engineer pursuant to sections 29, 30, 33, and 34, and the establishment having been already set up and put into effect, the district court reviews the orders and establishments already made by

the state engineer, and this review is limited to the orders of determination made, and is circumscribed as to those orders by the scope of the exceptions filed as provided in section 35. We say this because the pleadings as fixed by section 35 being "the order of determination of the state engineer and the statements or claims of claimants and exceptions made to the order of determination" limit and fix the scope of the review that may be conducted by the district court. Finally, the district court may, pursuant to section 36, do but one of two prescribed acts: "Affirm or modify the order of the state engineer." So by these sections it is sought to transfer the court of original jurisdiction into a court of review, where its field of review is limited and its powers or relief are fixed, and where the greatest function that it can perform with reference to a subject-matter over which it was by the organic law given original jurisdiction is to affirm or modify orders made originally by another tribunal. If this statute is to be upheld, the district court ceases to be a court of first instance as to these matters and becomes a court invested with limited powers of review and yet more limited powers as to the making of orders therein. Instead of being a proceeding the initial stages of which are before the engineer and the final stages before the district court, the reverse is the fact, for it is the order of determination as initially and finally made by the state engineer that is dealt with by the district court. Such order by the language of section 36 is final, subject only to modification by the district court. Modification has to do rather with degree of effectiveness than with finality. If that court affirms, it merely reasserts (Standard Dict.) an order in the making of which it had no part. Certainly, it will not be seriously contended that this is the original jurisdiction prescribed by section 6 of article 6 of the constitution as belonging to the district court.

The Supreme Court of the United States, in Pacific

Live Stock Co. v. Lewis, referring to the Oregon law under the Oregon constitution, said:

"That the state, consistently with due process of law, may thus commit the preliminary proceedings to the board and the final hearing and adjudication to the court is not debatable." Pacific Live Stock Co. v. Lewis, 241 U. S. 440, 36 Sup. Ct. 637, 60 L. Ed. 1084.

Such observations might, under the peculiar language of the Oregon constitution, making no mention of the matter of original jurisdiction over real property, be pertinent. Again, it might apply by reason of the peculiar reviewing powers conferred on the circuit court of Oregon by their constitution. But under our constitution, which of itself "commits the preliminary proceedings" in matters involving title to real property specifically to the district court and limits the power of review by such court to certain matters arising in the justice's court only (Anderson v. Kearney, 37 Nev. 314, 142 Pac. 803), such an observation as that made in the Lewis case is not to be anticipated.

It is asserted that the proceeding following the acts of the state engineer in making his determination and establishment is a special proceeding; that the transfer from the state engineer's office to the district court is not an appeal.

Taking the first assertion as to special proceeding, it must be admitted that, if it is a special proceeding, it is one originating before a ministerial officer; and, if it is a special proceeding, it is one involving title to real property, a subject constitutionally assigned to the judicial branch of the government. If it is a special proceeding, its culmination is an order establishing rights to the possession of real property, an order, the finality of which can, by the terms of section 36, be disturbed by the district court to the extent only of modification.

Taking the second assertion, that the proceeding in the district court is not an appeal, the language of the statute (section 36) precludes the idea of a trial de novo.

The latter term implies complete power to try and determine as of the first instance. The language of the statute here studiously avoids such, and makes the power of determination of the district court limited to affirmance or modification of an order of establishment already made and entered by a subordinate authority. Can it be seriously contended that this is the *original* jurisdiction reposed in the district court by the framers of article 6, section 6, of the constitution? However minutely the district court may review the proceedings under the exceptions taken (section 35), whatever evidence may be produced before the district court within the scope of the exceptions, however erroneous or unfounded the court may find the determination of the state engineer, such determination must stand in that court subject only to modification. The determination of the state engineer when filed in the district court under our statute (section 34) is not there as a matter of evidence (Pacific Live Stock Co. v. Lewis, supra; In Re Willow Creek, 74 Or. 592, 144 Pac. 505, 146 Pac. 475). It has passed beyond the realm of the evidentiary. It cannot be excluded. The rules of materiality, relevancy, competency, and general admissibility are inoperative, because the statute confirms it as a fixity which must be affirmed, or at most can be but modified. How in seriousness can it be said that this order of determination, made originally by the state engineer, the finality of which cannot be disturbed, but at most can be but modified, is not of the very essence of that which is the sine qua non of that judicial power vested in the original jurisdiction of the district court? True, the form of the procedure whereby the determination of the state engineer goes to the district court is not such as we are accustomed to recognize as an appeal, but the substance of the whole proceeding in the district court is that of review only, review looking only to affirmance or modification. An appeal or review, except where it is provided for hearing de novo, is not to be regarded as a trial. People v. McKemy, 168 Cal. 531, 143 Pac. 752.

Hence, the trial, if there be one, in which is involved the title or right to possession of real property in so far as the same is involved in a vested water right is, under this statute, originally conducted, and the original order of determination is entered by the state engineer.

A review of that trial looking only to affirmance or modification of that order is conducted in the district court; and, whether this review be termed an appeal or a special proceeding, the substance and result are the same.   Due process of law as affecting real property under our constitution (art. 6, sec. 6) placed the power of original trial and final determination in the district court; the whole matter was one for the judicial branch of the government only.   This was a constitutional guaranty under section 8, article 1.   The judicial authority of the state "may," says the Supreme Court of the United States, "keep within the letter of the statute prescribing forms of procedure in the courts and giving the parties interested the fullest opportunity to be heard, and yet it might be that its final action would be inconsistent with the amendment (Fourteenth Amendment, United States Constitution).   In determining what is due process of law, regard must be had to substance, not to form."   Chicago, Burlington and Quincy R. R. Co. v. City of Chicago, 166 U. S. 226, 17 Sup. Ct. 581, 41 L. Ed. 979.

And again in the case of Davidson v. New Orleans, 96 U. S. 97, 24 L. Ed. 616, that court made the pertinent observation:

"Can a state make anything due process of law which, by its own legislation, it chooses to declare such?   To affirm this is to hold that the prohibition to the states is of no avail, or has no application where the invasion of private rights is effected under the forms of state legislation."

By this statute and under the sections providing for the trial and determination by the state engineer of property rights in the contest proceeding (secs. 29, 30, 33, 34, 35, and 36), that officer is made to assume the

powers properly belonging to the judicial branch of the government.

These sections of the water statute were taken largely from a similar statute found in the State of Oregon. In passing upon these sections of the act as they are now amended by our statute of 1915, the federal court, in Bergman v. Kearney, adopted the conclusion announced by the Supreme Court of the United States in the case of Pacific Live Stock Co. v. Lewis, supra, where like provisions of the Oregon statute were challenged. The constitution of Oregon (art. 7, sec. 9) provides:

"All judicial power, authority, and jurisdiction not vested by this constitution, or by laws consistent therewith, exclusively in some other court, shall belong to the circuit courts; and they shall have appellate jurisdiction and supervisory control over the county courts, and all other inferior courts, officers, and tribunals."

In the Lewis case the appellant concluded, as does petitioner here, that the proceeding in the circuit court constituted an appeal and was therefore a proceeding, the nature of which was not properly belonging to the circuit court. The Supreme Court of the United States, reviewing this provision of the water law of Oregon, in response to the argument of appellant, said:

"A serious fault in this contention is that it does not recognize the true relation of the proceeding before the board to that before the court. They are not independent or unrelated, but parts of a single statutory proceeding, the earlier stages of which are before the board and the later stages before the court. In notifying claimants, taking statements of claim, receiving evidence, and making an advisory report, the board merely paves the way for an adjudication by the court of all the rights involved. As the supreme court of the state has said, the board's duties are much like those of a referee." Pacific Live Stock Co. v. Lewis, supra.

Speaking of this phase of our water law, Judge Farrington, in his opinion in the case of Bergman v. Kearney, said:

"There is no appeal from the determination of the engineer to the district court, but rather a continuation in that court of proceedings commenced by and before the state engineer."

The decision of the Supreme Court of the United States in the case of Pacific Live Stock Co. v. Lewis, while it appears to have afforded the thought which guided the learned judge of the federal court in the assertion just quoted, appears to our mind to afford no assistance in deciding the question as to the nature of the proceedings before the state engineer and as to the validity of sections 30, 33, 34, 35, 36, and 38 of the statute under the sections of our constitution. In that case the court was, as it expressly declares, guided by the decision of the Supreme Court of Oregon in the case of In Re Willow Creek, supra. This latter decision of the Supreme Court of Oregon was construing the statute of that state in the light of their constitution, wherein the jurisdiction of the circuit court is as stated. Under their constitutional provision the way was made clear for matters such as the investigation by the circuit court of the findings and determination of the water board, the latter being the "early stages" of a statutory proceeding, the "later stages" of which might be before the circuit court under its constitutional grant of "appellate jurisdiction and supervisory control over * * * officers and tribunals."

It is said in the prevailing opinion that neither the constitution of Nebraska nor Nevada "has a word to say about irrigation." Hence, the decision of the Supreme Court of Nebraska in the cases of Crawford v. Hathaway, 60 Neb. 754, 84 N. W. 271, and Enterprise Irrigation District v. Tri-State Land Co., 92 Neb. 121, 138 N. W. 171, should be guiding authorities here. True, neither the constitution of Nevada nor that of Nebraska mentions irrigation; in both, however, property rights are protected. But, singularly, in Nevada real property is a subject over which a given tribunal, the district court, is vested with original jurisdiction. No such provision is found in the constitution of Nebraska. This same distinction may be noted in comparing the constitution of

Nevada with those of Wyoming and Oregon, and this distinction differentiates the effect of the water statute of those states from that of ours under our constitutional provisions. This differentiation takes from the force and effect of the decisions rendered in the states named.

The function exercised by the state engineer under sections 29, 30, 33, and 34 being an original "determination and establishment" of the right to possession and enjoyment of property arrived at after a trial conducted with all the formality with which such would be conducted in a court of established jurisdiction, attended with all the seriousness and responsibility that is always attendant where title and right to possession of property is involved, is one which by the express command of the constitution is placed in the district court, which by the specific inhibition of that organic law is denied to any other authority.

Keeping always in mind the nature of the proceeding contemplated by our water law and the character and nature of the subject-matter, and realizing that our water law was largely drafted from the Oregon statute, we may dwell with more than usual seriousness on a comparison of the constitutional grant of jurisdiction of our district court with that of the circuit court of Oregon. The constitution of Oregon (art. 7, sec. 1), vests the judicial power of the state in the supreme court, circuit court, and county courts. To the circuit court is granted general jurisdiction to be limited, regulated, and defined by law. Section 9 of article 7 makes clear the placing of all judicial power not otherwise vested by the constitution or by laws in the circuit court. The term "jurisdiction" as applied to courts has been variously defined. It is:

"The power conferred on a court by constitution or statute to take cognizance of the subject-matter of a litigation and the parties brought before it, and to legally hear, try, and determine the issues  *  *  * joined by them, either of law or of fact." Brown on Jurisdiction, sec. 2. Western Union Tel. Co. v. Arnold, 33 Tex. Civ. App. 306, 77 S. W. 249.

"Jurisdiction is the right to put the wheels of justice in motion and to proceed to the final. determination of a cause upon the pleadings and evidence." Illinois Central R. Co. v. Adams, 180 U. S. 28, 21 Sup. Ct. 251, 45 L. Ed. 410; Venner v. Great Northern Ry., 209 U. S. 24, 28 Sup. Ct. 328, 52 L. Ed. 666.

Jurisdiction is not only the power to hear and- determine, but also the power to render a particular judgment in a particular case. Charles v. White, 214 Mo. 187, 112 S. W. 545, 21 L. R. A. (N. S.) 481, 127 Am. St. Rep. 674.

Turning to our constitution (art. 6, sec. 6), we find specific conference of jurisdiction placed in the district court with reference to a given and specific subject-matter—to wit, title to real property and the right of possession thereto—so the right to put the wheels of justice in motion and proceed to final determination as to these specific subjects is vested in our district court. Moreover, the section of the organic law referred to gives the district court *original* jurisdiction. The word "original" is defined as:

"Of or belonging to the beginning; the first stage or existence of a thing." Standard Dictionary.

"Of or pertaining to the origin or beginning; first in order or existence; belonging to or being the origin or source." Webster.

"Pertaining to or characteristic of the first or earliest stages or state of anything." Century.

"Proceeding immediately from its source; not arising from or dependent on any other thing; independent; underivative." Oxford.

Our constitution not only specifies the branch of the state government in which that particular subject—to wit, title to and possession of real property—shall be determined, and specifically provides the forum in which such matters may be heard and determined, but with equal emphasis it declares that forum to be the situs of the first stage or existence of a case involving matters of this general character. It is a well-established doctrine that the extent, character, and completeness of jurisdiction of a court is ordinarily to be determined by the

provisions of the organic law or by such statutory provisions as may be enacted thereunder. To give sanction to the expression found in the prevailing opinion, and taken from the opinion of the federal district court in the case of Bergman v. Kearney, wherein it is declared that the proceedings provided for by sections 36, 37, and 38 are but a continuation in the district court of proceedings commenced by and before the state engineer, we must close our eyes not only to the technical but to the ordinary acceptation and meaning of the term "original jurisdiction" as found in section 6 of article 6 of our constitution applicable to our district court. The term permits of no such interpretation as signifying the continuation of a something commenced before any other authority. This term is applied to a specific forum which is empowered to deal originally with specific subjects; it limits the place of first existence of actions with reference to the matters named. Actions commenced in a court endowed with original jurisdiction must, by reason of the very terms used, giving the words their very broadest scope and significance, be independent and unrelated to any primary or inferior authorities. Original jurisdiction is a vested power which bears no relation to prior proceedings. It is a power independent and unrelated; hence, the view taken by the Supreme Court of the United States in the case of Pacific Live Stock Co. v. Lewis, supra, as to the validity of the Oregon law in the light of the Oregon constitution, cannot be binding or applicable, and we regret that it can be of no assistance in view of the vested power and emphatic exclusiveness thereof placed specifically in the district court by the constitution of this state as to the subject of real property, its title and possession.

Addressing himself to this phase of the question and to the same contention as that of petitioner here, the learned judge of the federal court in the case of Bergman v. Kearney, says:

"The insistence that the proceedings provided in the statute as amended are tantamount to an appeal to

the district court, as authorized in the act of 1913, is not well founded. At no stage does the determination possess any of the characteristics of finality; it cannot be regarded as terminating between the parties litigation on the merits of the case."

We dwell on the words of the learned judge, because they give force to our position both as to section 38 and also as to the effect of sections 34, 35, 36, and 37.

The very thing prescribed against by section 6 of article 6 of the constitution is here presented—to wit, a proceeding involving title to or possession of real property brought before the district court, the initial stage or existence of which was before another jurisdiction or officer. Moreover, by the operation of these sections in conjunction with section 38, not only are the initial stages and existence of the proceedings brought before an authority other than that prescribed by section 6 of article 6 of the constitution, but the initial order of determination is before another authority, and more, the initial power of execution of such orders of determination (section 38), which execution lays hold on real property, divests of or confers possession, declares the right of possession to, and would deliver possession thereof; all of which powers are by the constitutional prescription placed originally in the district court.

In reference to this proceeding, the court, in Bergman v. Kearney, further comments:

"It [the order of determination] operates, not as a judgment, but as a pleading, or the findings of a referee."

Again we dwell on the words of the learned federal court, for we may emphasize our thoughts thereby.

Section 33 requires the state engineer to "make, and cause to be entered of record in his office, an order *determining and establishing* the several rights to the waters of said stream. * * *" Section 34 provides for the filing of this order of determination and establishment in the office of the clerk of the court. This is made and entered prior to any court action.

A pleading is a statement of causes of action or

grounds of defense; allegations of what is affirmed on one side or denied on the other, disclosing to the tribunal of trial the matter in dispute between the parties. It seems to us we are going far afield when we try to apply this definition to an order of determination filed in a court, subject to attack only within the scope of exceptions filed thereto, and which order of determination can only be affected in that court to the extent of modification or affirmance.

Section 38 commands the state engineer, after filing his order of determination with the clerk of the district court, to immediately assume the role of executioner, and without let or hindrance, as though clothed with all the equitable writs, enter upon private property, close and open headgates, confer or divest possession of property. Let us view section 38 under the theory of respondent that the state engineer might exercise the powers there sought to be conferred because his action in this respect was but temporary at most and was not final. If this ministerial officer can confer or divest title to property for the period of an hour, if he can for a day oust of or instate to possession of real property, what is there to limit the time during which his order conferring or divesting title or ousting of or instating to possession may be enforced? If the determination and order and the execution thereof made by the state engineer affecting the title to and right to possession of real property can, under our constitution, be effective for the shortest period of time, can it not with equal sanction be made to be effective at the pleasure of that officer? When the constitution declared that where a controversy arose involving the title or right to possession of real property it should originate in the district court, did it infer there that any other power than that tribunal could even temporarily oust of possession or divest of ownership? Was not the jurisdiction conferred on the district court by article 6, section 6, original and exclusively so? If so, then by what other means than the power and process of the district court may title to real property or the right

to possession thereof be even temporarily determined? The prevailing opinion in dealing with section 38 waives it aside by alluding to the provision of section 39, wherein it declares that the operation of the order of determination "may be stayed in whole or in part by any party upon filing a bond in the court wherein such determination is pending." We deem it sufficient observation to say that we are here required to determine whether a law is contrary to constitutional prescription, rather than as to how the effect of the law may be avoided. Section 38 is before us in this proceeding more effectually than any other section of the statute. It is no answer to the question of constitutionality to say that the effect of the law may be stayed by the giving of a bond by the party against whom the operation of the law may be enforced. Such does not operate to make a void law valid, nor does the fact that by this means there is offered a simple way of avoiding the force of the law resolve the question of its constitutionality. This section deals with property of the highest order and of which no man may be deprived without due process of law. Const. sec. 8, art 1. The question is not, may the force of this statute be avoided by some court order, such as the issuance of an extraordinary writ, but, rather, does the statute when enforced place in the hands of some ministerial officer, power and privilege which by the organic law may only be exercised by the judicial branch of the government? We have declared that where the means for the exercise of a grant of power are given, no other or different means can be employed as being more effectual or convenient. State v. Hallock, 14 Nev. 202, 33 Am. Rep. 559; Fletcher v. Oliver, 25 Ark. 289.

Let us suppose that a statute was enacted authorizing the state engineer to inquire as to the title and right to possession of all lands contiguous to the natural watercourses in this state, and that as to a strip of land for one mile on each side of such watercourses he was empowered to inquire as to the ownership or right to

possession and to "determine and establish" the same, and, after filing his determination and establishment in the office of the clerk of the district court, he was empowered by the statute to issue his orders, putting his determination and establishment into effect. Let us suppose that pursuant to such statute the state engineer, having determined and established title and right to possession of the lands adjacent and contiguous to the Carson River system, sought to exercise his orders, and in furtherance thereof directed that certain parties vacate a given tract, and that the same be turned over to another; that certain gates be thrown open and others permanently closed; that certain titles were good and sufficient and others were void—would such a statute be constitutional? Under section 6 of article 7 of our organic law, would such acts be recognized? Manifestly not. A writ of injunction would no doubt lie to prevent the acts of the state engineer in this respect, but if the statute be challenged as to its constitutionality, would it be a sufficient answer for this court to say that, inasmuch as a remedy was available by way of injunction, the question of constitutionality might be overlooked? Would this court be warranted, when called upon to declare as to the constitutionality of the statute, in saying: "Assuming that this statute is unconstitutional, the parties are protected in their property rights, inasmuch as they may seek relief by injunction," or would it suffice to say that, inasmuch as injunction might be sought to prevent the acts of the engineer, therefore the act was not in contravention of the organic law?

But there is another observation that might be made as to the availability of a remedy by injunction against the order determining and establishing water rights under section 33 of the statute under consideration and against the enforcement of such orders as provided for by section 38 of the statute. The learned judge of the federal court in the Bergman case, like the prevailing opinion in this case, passed lightly over sections 33

and 38 and laid emphasis on the so-called remedy offered by section 39. The prevailing opinion contents itself with the assumptive hypothesis that section 38 is unconstitutional. In order to typify the remedy suggested by section 39, relied upon in the prevailing opinion, let us assume that an appropriator on the upper waters of the North Fork of the Humboldt (a tributary of the Humboldt River system), finding his vested rights impaired by the state engineer, seeks the remedy of injunction to prevent his being deprived of his property by the acts of that officer. For immediate relief he must act under section 39 of the statute, which provides:

"At any time after the order of determination, evidence and transcript has been filed with the clerk of the court, as aforesaid, the operation of said order of determination may be stayed in whole or in part by any party upon filing a bond in the court wherein such determination is pending in such amount as the judge thereof may prescribe, *conditioned that such party will pay all damage that may accrue by reason of such determination not being enforced, pending decree by said court.* * * *" (We italicize.)

To whom may damage accrue by reason of such determination not being enforced? All the appropriators on a stream system affected by the order of determination made by the state engineer whose order of determination the appropriator seeks to stay. The injunction proceedings must be and are none other than a proceeding for the determination of a water right and to relieve such water right of an order unjustly and illegally made. That being true, the party seeking injunctive relief, unless he brings in all the appropriators on the stream, will be met with the objection of defect of parties defendant, because by section 45 of the original act of 1913 it is provided that:

"In any suit which may be brought in any district court in the state for the determination of a right or rights to the use of water of any stream, all persons who

claim the right to use the waters of such stream and the *stream system of which it is a part* shall be made parties," etc. Stats. 1913, p. 204.

So our appropriator on the North Fork seeking injunctive relief from the order affecting his property must bring in as parties defendant, under the authority of sections 39 and 45, not alone the state engineer, but "all persons who claim the right to use the waters of such stream and the stream system of which it is a part." The stream system of which the North Fork is a part is the Humboldt River system, extending from northern Elko County to western Humboldt County, affecting a culture watered area of approximately 300,000 acres, with more than 400 water users and appropriators. The court in fixing the bond before the issuance of the injunction must do so with a view to the "damage that may accrue by reason of such determination not being enforced," and the condition must run accordingly. Injunctive relief under such conditions is the adequate protection suggested by the prevailing opinion, afforded by way of staying the order of determination. To him whose property has been taken, whose vested rights have been divested, whose possession has been ousted, whose title may have been set aside, an injunction under such conditions is said to be available. Section 39, taken, as it must be, in connection with section 45 of the act of 1913, makes injunctive relief a useless and impossible thing. However just may be the appropriator's cause, however secure and well founded may be his vested right, immediate relief from the effects of an order, however unjust or unauthorized, is a thing impossible. A more effective plan of making the determination and order of the state engineer entered and put forth under sections 33 and 38 free from interference by court action could scarcely be conceived. By these sections a condition, and not a theory, is presented. The injunctive relief offered by section 39, when sought for, will, in the light of section 45, be found to be a remedy that does not relieve, a function without substance, a

*camouflage* which serves the purpose of covering the hidden sting in section 38.

Respondents contend that section 38 is put in force only by the properly constituted authority, and in furtherance of this they argue that not until the final order and decree of the state engineer are filed with the clerk of the district court may such order become operative. In this, they say, is due process.

The contention of respondents in this respect finds sanction only in the fact that the order of determination, evidence, and transcript are filed with the clerk of that tribunal wherein is vested the original power to determine matters of that nature. If we read the section correctly, it calls for no judicial investigation or sanction to put it in operation. From the time the state engineer files the orders of determination which he made, affecting certain property rights, he might set about under the sanction of section 38 and from thence exercise all the jurisdiction and powers that by the organic law were reposed in the district court. The judge of the district court, that constituted officer whose judgment and decision is presumed to be exercised and in whom is reposed the powers and duties under the law of determining title, possession, and right to possession of real property, might be in the remote ends of the state, yet by the mere act of filing his determination the state engineer becomes clothed with powers to fix, limit, regulate, establish, and set up the title or the right of possession or the possession of real property within that judicial district. This statute may give evidence of a studied effort to clothe the proceedings with the outward form of due process of law, but with that ingenious refinement of which Mr. Cooley makes mention, it is made devoid of the substance. Chicago, Burlington & Q. R. R. Co. v. City of Chicago, supra.

Section 38 ousts the district court of its constitutional function and seeks to repose in a ministerial officer powers which belong exclusively in that court. It is in contravention of the letter and spirit of the constitution,

as expressed in section 6, article 6, as well as in article 3, section 1.

In the case of Bergman v. Kearney, supra, plaintiff contended, as does petitioner here, that these sections of the act were void as conferring judicial powers on a nonjudicial officer. In the opinion in that case, the court took occasion to remark:

"Apparently it is not the exercise of all judicial authority, but the exercise of that portion of the judicial authority pertaining or belonging to the judicial department, which is forbidden."

We would search in vain for an expression more cogent to the furtherance of our views. Real property, the title thereof, and questions involving the possession or right of possession thereof, are all matters which the constitution ordained should be originally dealt with, pertain to, and belong to the judicial department. These matters are exclusively and originally within the jurisdictional authority pertaining and belonging to the district court. The exercise of judicial authority to the extent of ousting from or conferring possession of real property is not only ultimately, but originally, in the district court, and any act which seeks to place this power to any extent in any other tribunal, board, body, or officer must fall by the force of the organic law, and especially under the view thereof as expressed by the learned judge of the federal court.

It is the exception found in section 1 of article 3 of our constitution that adds emphasis to the application of the expression of the learned judge of the federal court:

"No persons charged with the exercise of powers properly belonging to one of these deparments shall exercise any functions appertaining to either of the others, *except in cases herein expressly directed or permitted.*"

There are exceptions expressly directed and permitted by the organic law itself. These exceptions furnished the basis for the assertion in the Bergman-Kearney case that "a complete and perfect separation of powers is

not made by the constitution itself." The veto power of the governor is authorized by the constitution; likewise the lieutenant-governor is made the presiding officer of the senate. It is by constitutional provision that the legislature is made the judge of the qualifications of its own members, and the senate the high court of impeachment. By section 6, article 6, the original jurisdiction over the subject of real property, title thereto, and possession thereof, was specifically vested in the judicial branch, and no exception is expressly directed or permitted, nor can such exception be inferred from the language employed. The power of originally putting in motion the wheels of justice applicable to the title or right to possession of real property is seated in a designated branch of the government, and that without the remotest inference of exception:

"When the constitution defines the circumstances under which a right may be exercised or a penalty imposed, the specification is an implied prohibition against legislative interference to add to the condition." Cooley, Constitutional Limitations, p. 99.

It is seriously contended here that the powers sought to be conferred on the state engineer by section 29 and those sections following are not such as belong to judicial officers; and in furtherance of this argument it is said that all acts judicial in their nature are not within the exclusive province of the judicial department of the government. We are referred to instances where nonjudicial officers have been required to exercise functions which in a sense are judicial and courts have held statutes imposing such duties or powers to be constitutional. Perhaps the most striking illustration of this is found in the statutes creating our railroad commission, the constitutionality of which was passed upon in the case of Southern Pacific v. Bartine (C. C.) 170 Fed. 725. But there it was held that the power exercised by this commission, as by other boards similarly created, is, in a constitutional sense, legislative rather than judicial. "Judicial power in the constitutional sense," says the

court in the Bergman case, supra, "is something more than authority to hear and determine; it includes the power to decide finally and conclusively." We would add to this expression by saying that when by constitutional mandate the power to hear *originally* and decide finally as to a specific thing, as in this instance the right to possession of real property, is placed in the judicial branch of the government, then a statute which seeks to confer these powers, either in the initial stage of determination or finally, in some other branch of the government, is void as against the constitutional mandate. If the original jurisdiction to determine reasonable rates to be charged for freight and fares by common carrier was a function which by the constitutional mandate could be exercised originally and finally only by the district court, would not the fixing of freights and fares by a board or officer other than the district court be a usurpation of judicial function?

It is absurd to argue that in the proceeding before the state engineer nothing is involved which belongs to the function of the district court under its constitutional grant of jurisdiction. A mere analysis of the matter dispels such a contention. From the very moment that the state engineer attempts to *establish* (secs. 29, 30, and 33), title and right to possession are involved. By reason of the force and effect of section 38, the immediate possession of and right of possession of a usufructuary estate is to be determined. When the proceeding before the state engineer passes out of the realm of investigation into that of *establishment* or *determination,* the nature of the proceedings changes; and the constitutional prescription, establishing the specific functions of the several branches of the state government, as a traffic officer on the avenue of governmental guaranties, calls a halt and points the way. Up to a given point the proceedings are ministerial; when they assume to establish or determine (secs. 25 to 38) they take on the nature of an action to quiet title (Rickey Land and Cattle Co. v. Miller & Lux, supra), and that

function belongs, from the very initial step, to the district court.

It has been suggested that the statute here under consideration is enacted under the police power of the state and for regulation; hence, the observations as to the application of the several sections of the constitution are not well taken. No authority of which we are aware has ever held that police regulation took the place of or superseded specific constitutional provision. Determination and establishment of individual or relative property rights is one thing; police regulation after determination and establishment is another. Where by the organic law itself the way is made and the machinery furnished for the carrying out of a given policy, that is final, and police regulation can only follow.

To those who, believing in organized government, would adhere to a democracy, the constitution is looked to as the instrument of guaranty, and its specific inhibitions and commands are to be enforced and carried out. We are referred to the learned words coming by way of an excerpt from an address of Mr. George B. Rose, of the Arkansas bar. The language and thought therein expressed, in the midst of the prevailing opinion, is most refreshing and enlightening. In our humble way we might interpolate the words of the learned author by saying that the constitution is never a "dam to stem the tide of human progress," when it points the way and paves the avenue by which that progress may be accomplished. It is the avoidance of that "broad channel" furnished by the organic law for human progress, and evasive constructions sanctioning such avoidance, that imperils the existence of constitutional government by making the same a "mere scrap of paper" rather than a guaranty. It is the "constitution-be-damned" theory that wrecks the chariot of democratic government and makes the road of constitutional safety a quagmire of uncertainty.

In the proceeding before us it is sought to prohibit the district court from assuming jurisdiction of a matter

involving title and right to possession of real property where a determination and establishment of that title has been already made by a ministerial officer and where, notwithstanding the constitutional direction that such was the original function of the district court, the determination and establishment as originally made by the ministerial officer can only be affected to the extent of modification.

The order of determination was originally and finally made by a ministerial officer, and in this he exercised functions belonging to the district court.

The district court assumes to take jurisdiction of this matter after determination by a ministerial officer, and can only review to ultimately affirm or modify that determination. In this it permits itself to be divested of original jurisdiction and assumes an appellate jurisdiction forbidden by the constitution.

The order of determination which the lower court will act upon, and which it will modify or affirm, is a decree by which it is bound, and not of its own making. It is not due process of law.

This writ should have issued.

ON PETITION FOR REHEARING

*Per Curiam:*

Rehearing denied.