C. GEE WO v. STATE OF NEBRASKA.

FILED FEBRUARY 15, 1893.    No. 5485.

1. **Information:** NEGATIVE AVERMENT OF PROVISO IN STATUTE. In charging an offense under a statute the general rule is that a negative averment of the matter of a proviso is not required in an information, unless the matter of such proviso enters into and becomes a part of the description of the offense, or is a qualification of the language defining or creating it.

2. ———: ———: PHYSICIANS: PRACTICE IN VIOLATION OF LAW. Where, however, the matters of the proviso point directly to the character of the offense, or where the statute includes two or more classes which will be affected thereby, such as physicians who remove into the state to practice after the passage of an act to regulate the practice of medicine, and persons who were residing in the state and practicing under a former act, in such cases the information must show on its face that the accused does not belong to either class.

3. **Statutes:** ACT CREATING STATE BOARD OF HEALTH. Act held to be within the power of the legislature, and in its general scope not in conflict with the constitution.

ERROR to the district court for Douglas county. Tried below before DAVIS, J.

*W. S. Shoemaker,* for plaintiff in error.

*George H. Hastings, Attorney General,* and *Jacob Fawcett,* for the state.

MAXWELL, CH. J.

The plaintiff in error was convicted of practicing medicine in the state without lawful authority so to do as provided in the act of 1891, to establish a state board of health, and to regulate the practice of medicine in the state of Nebraska, and was sentenced to pay a fine and costs. The act of 1891 superseded the law of 1881. It

19

appears from the record that the plaintiff in error in 1889 had filed the statement and affidavit required by the law of 1881, and was practicing under that law when the act of 1891 took effect. The first error alleged is that the information fails to charge an offense. It is as follows:

" THE STATE OF NEBRASKA, ⎫ ss.
    COUNTY OF DOUGLAS.   ⎬

" Of the May term of the district court of the 4th judicial district of the state of Nebraska, within and for the county of Douglas and state of Nebraska, in the year of our Lord 1892. I, Timothy J. Mahoney, county attorney in and for the county of Douglas, in said state of Nebraska, who prosecutes for and in behalf of said state in the district court of said district, sitting in and for said county of Douglas, and duly empowered by law to inform of offenses committed in said county of Douglas, come now here in the name and by the authority of the state of Nebraska, and give the court to understand and be informed that on the 29th day of March, A. D. 1892, C. Gee Wo, late of the county of Douglas aforesaid, in the county of Douglas and state of Nebraska aforesaid, then and there being, then and there did unlawfully practice medicine, surgery, and obstétrics, and the branches thereof, without first having obtained and registered a certificate from the state board of health authorizing him, the said C. Gee Wo, to practice medicine, surgery, and obstetrics as required by law, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of Nebraska."

Section 9 of the act of 1891 is as follows: " It shall be the duty of all persons intending to practice medicine, surgery, and obstetrics in the state of Nebraska, before beginning the practice thereof in any branch thereof, to present his diploma to said board, together with his affidavit that he is a lawful possessor of the same, that he has attended the full course of study required for the degree of M. D.,

and that he is the person therein named.   Such affidavit may be taken before any person authorized to administer oaths, and the same shall be attested under the hand and official seal of such official, if he has a seal, and any person swearing falsely in such affidavit shall be guilty of perjury, and subject to the penalty therefor."

Section 11 is as follows: "All physicians who shall be engaged in practice at the time of the passage of this act shall, within six months thereafter, present to said board their diplomas and affidavits as hereinbefore provided, or, in the case of persons not graduates who were entitled to registration and practice under the provisions of the act entitled 'An act to regulate the practice of medicine in the state of Nebraska,' approved March 3d, 1881, on affidavit showing them to have been entitled to so register and practice, and a certified transcript of their registration under said act, and upon their doing so shall be entitled to the certificate herein provided, which they shall file with the county clerk as herein provided; *Provided*, That no one having the qualifications required in, and having complied with, said act of March 3d, 1881, shall be liable to prosecution for failure to comply with this act until the expiration of said period of six months."

It will be observed that there are two classes of persons entitled to registration.   First, those who are about to begin the practice of medicine in the state; and second, persons already engaged in the practice under the act of 1881, when the act of 1891 took effect.

In *State v. Phippin*, 70 Mich., 11, the defendant was arrested for unlawfully advertising and holding himself out to practice medicine.   The act of 1883, under which the defendant was arrested and tried, prescribed the necessary qualifications to practice medicine in the state as follows:

"The necessary qualifications to practice medicine in this state shall be: 1. That every person who shall have actually practiced medicine continuously for at least five

years in this state, and who is practicing when this act
shall take effect, shall be deemed qualified to. practice med-
icine in this state, after having registered in the office of
the county clerk as provided by this act.    2. Every grad-
uate of any legally authorized medical school in this state,
or in any one of the United States, or in any other coun-
try, shall be deemed  qualified to practice medicine and
surgery in all its departments after having registered as
provided by this act; *Provided,* That the provisions of
this act shall not be construed so as to prohibit any. student
or under-graduate from practicing with and under the in-
struction of any person legally qualified to practice medi-
cine and surgery under and by the provisions of this act;
*Provided,* That every person qualified to practice medicine
and surgery under the provisions of this act shall, within
three months after this act shall take effect, file with the
county clerk of the county wherein he has been engaged
in practice, or in which he intends to practice, a statement
sworn to, setting forth : 1. If he is actually engaged in
practice in said county, the length of time he has been en-
gaged in such continuous practice, and if a graduate of any
medical college, the name of the same, and where located."

The substance of the information in that case is as fol-
lows : "That on the 29th day of June, and between that
day and the day of making this complaint (July 28th), at
the city of Cedar Rapids, in the county of Kent, one
William W. Phippin did then and there advertise and hold
himself out to the public as authorized to practice medi-
cine, and did practice medicine in the city, county, and
state aforesaid, without having the qualification required
by law so to do, to-wit, he (the said William W. Phippin)
not having practiced medicine continuously for five years in
this state and he (the said William W. Phippin) not being
a graduate of any legally authorized medical college in
said state, or in any of the United States, or in any other
country, against the forms of the statute," etc.

 It will be observed that the Michigan statute, like that
of this state, provides for two classes of persons who may
practice medicine, and the information shows on its face that
the defendant belonged to neither class and therefore was
not authorized to practice medicine in the state. Mr.
Bishop, in Directions and Forms, sec. 999, has given a
somewhat similar form against an unlicensed physician.
It is claimed on behalf of the state that the second class is
a mere exception and therefore need not be negatived. Mr.
Chitty, Cr. Law, vol. 1, 232, in speaking of exceptions,
says: "And it is never necessary to negative all the excep-
tions which by some other statute than that which creates
the offense might render it legal, for these must be shown by
defendant for his own justification. Thus, an indictment
for a misdemeanor against a receiver of stolen goods need
not aver that the principal has not been convicted. And in
general all matters of defense must come from the defendant
and need not be anticipated by the prosecutor; nor is it
necessary for him to negative the commission of a higher
offense. So it is never necessary to state the conclusion of
law to be derived from the premises, but merely to state the
facts and leave the court to draw the inference." (*Rex v.
Pemberton,* 2 Burr. [Eng.], 1036; *King v. Reynolds,* 1
Wm. Bla. [Eng.], 230; *King v. Baxter,* 5 T. R. [Eng.],
84; *King v. Higgins,* 2 East T. R. [Eng.], 19, 20.) Thus,
in an indictment for disobedience of a justice's order it
need not be averred that the order was not revoked, nor is
it necessary to negative the commission of a higher crime.
(*Rex v. Higgins,* 2 East T. R. [Eng.], 5–20; 1 Bish., Cr.
Pro., sec. 513.) From an examination of all the cases the
true rule appears to be, a negative averment to the matter
of an exception or proviso in a statute is not requisite in an
indictment or information, unless the matter of such ex-
ception or proviso enters into or becomes a part of the de-
scription of the offense, or a qualification of the language
defining or creating it. Therefore the proviso in the stat-

ute excepting from its operation those persons who conscientiously observe the seventh day of the week as the Sabbath, instead of the first, need not be referred to. The reason is, the proviso is not a part of the description of the offense, but is in the nature of a personal privilege—to keep the seventh day of the week as the Sabbath in the place of the first, but whether the defendant is entitled to the benefit of the proviso must be determined from the evidence. A different rule prevails, however, where the matter of the proviso points directly to the character of the offense, and is made a material qualification of the statutory description of it, as in an indictment for selling liquor, where the proviso was, "'That nothing contained in this section shall be so construed as to make it unlawful to sell any spirituous liquors for medicinal and pharmaceutical purposes.' In such case the indictment or information must contain the negative averment that the sale of the liquor was not for medicinal or pharmaceutical purposes." (*Hirn v. State*, 1 O. St., 16; *Billigheimer v. State*, 32 Id., 435; Maxw., Cr. Pro., 477.) Applying these rules to the information in question and it fails to show that the plaintiff in error belongs to either of the principal classes set forth in the statute, and is therefore insufficient. It is unnecessary, therefore, to examine the evidence.

2. It is claimed on behalf of the plaintiff in error that the act is in conflict with the constitution. The general power of the state to provide that only persons skilled in the healing of diseases shall hold themselves out to the public as physicians is undoubted.

This power cannot be used to build up any particular school of medicine, but is designed to permit only those qualified by education and good moral character to engage in the business. Even with the utmost care upon the part of the state it may well be questioned if some of the medical schools are as thorough as they should be. The relation between the physician and the patient is necessarily

confidential.   If a person is afflicted with some ailment, or some member of his family is sick, and he calls to his aid a physician, he has a right to expect the ordinary degree of skill and care.   His restoration or that of his loved ones—nay, life itself—may depend upon the skill, attention and good judgment of the physician.   No one, therefore, should be permitted to practice who has not the necessary diploma, or has been in actual practice in the state for the time prescribed by statute.   The board, however, is not to use its power arbitrarily nor to refuse a certificate in a proper case, nor to attempt to build up any particular system.   The judgment is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.