### P. R. CARPENTER V. STATE OF NEBRASKA.

#### FILED OCTOBER 14, 1921. No. 21931.

1. Indictment: PRACTICE OF MEDICINE: NEGATIVING EXCEPTIONS IN STATUTE. The exceptions set forth in section 2724, Rev. St. 1913, as amended in 1919 (Laws 1919, ch. 190, title VI, art II, sec. 8), form no part of the description of the offense, and it is unnecessary that they be negatived in an indictment charging a violation of the medical practice act.

2. Physicians and Surgeons: ACT REGULATING PRACTICE OF MEDICINE: VALIDITY. The statute regulating the practice of medicine is not void as discriminatory because it fails to provide that persons desiring to practice "Napropathy" may treat diseases without examination.

3. ———: STATE BOARD OF HEALTH: DUTIES. Unless so provided by the legislature, it is not incumbent upon the state board of health to furnish means for examining the qualifications of all persons desiring to treat patients by drugless or other methods of healing for fee or reward, and to fail to do so is not a denial of any constitutional right.

4. ———: ———: NEW METHODS OF HEALING. Neither the legislature nor the state board of health can be expected to anticipate the inception of new methods of healing.

ERROR to the district court for Brown county: ROBERT R. DICKSON, JUDGE. Affirmed.

Clarence S. Darrow and William M. Ely, for plaintiff in error.

Clarence A. Davis, Attorney General, and C. L. Dort, contra.

Heard before MORRISSEY, C.J., LETTON, ROSE, DEAN,

(742)

ALDRICH, DAY and FLANSBURG, JJ.

LETTON, J.

Plaintiff in error (hereinafter termed defendant) was convicted upon four counts of an information charging him with the illegal practice of medicine, for a stated fee. The evidence shows that defendant, who did not possess the qualifications as to professional education required by the statute for the practice of medicine, or the treatment of diseases, had treated the persons named in the information for physical ailments, for a fee, by a manipulation of the spine or its ligaments.

Defendant relied for a reversal of the judgment upon a number of assignments of error, which may be grouped as follows:   (1) No count of the information charges an offense; (2) the court erred in excluding evidence offered in his behalf; (3) the court erred in giving and refusing certain instructions; (4) the statute is in violation of the Constitution of the state and of the United States.

Section 2724, Rev. St. 1913, as amended in 1919 (Laws 1919, ch. 190, title VI, art. II, sec. 8), is as follows: "Any person shall be regarded as practicing medicine, within the meaning of this article, who shall operate on, profess to heal or prescribe for, or otherwise treat any physical or mental ailment of another.   Nothing in this article shall be construed to prohibit gratuitous services in case of emergency, and this article shall not apply to commissioned surgeons in the United States army and navy, nor to nurses in their legitimate occupations, nor to the administration of ordinary household remedies."

It is argued that the latter sentence is not negatived in the indictment; that, if the indictment may be true and still the accused may not be guilty of the offense described in the statute, it is insufficient; that the section quoted has an arbitrary definition of practice of medicine, and that the exceptions made in the second sentence form as much a part of the definition as any other part of the section.

The same complaint was made to the information in the

case of *Sofield v. State,* 61 Neb. 600. The court said: "The information is assailed on the ground that it failed to contain any negative averment relative to the exceptions contained in section 17, ch. 55, Compiled Statutes. Such a negative averment was wholly unnecessary. *O'Connor v. State,* 46 Neb. 157."

In *Holt v. State,* 62 Neb. 134, which was a prosecution for keeping intoxicating liquor for sale without a license, under a section of the statute which provides: "That this [section] shall not apply to physicians or druggists holding permits for the sale of liquors for medicinal, mechanical, chemical, or sacramental purposes, or persons having liquors for home consumption"—it was argued that the information was fatally defective because it did not specifically allege that the defendant was not one of the persons designated in the proviso. But the court said: "The information sufficiently negatives the exceptions of the statute. It alleges that the accused had no liquor license or druggist's permit, and that the defendant kept the intoxicating liquors for sale and did sell the same. * * * The information negatives all exceptions of the statute which are a necessary description of the crime attempted to be charged. Moreover, the general rule is that only such exceptions and provisions of a statute as are part of the description of the offense need be negatived in the information." This principle applies and the information is sufficient.

It is assigned as error that the court refused to permit defendant to testify as to the condition of several of his patients before and after the treatments administered by him, and that in such treatments no drugs, medicines or surgical operations were used. It is said that the fact that defendant belongs to a class that has been unjustly discriminated against, and that his constitutional right to life, liberty and the pursuit of happiness has been, or is sought to be, violated by the statute, can only be established by evidence showing the real nature of the acts performed. While a portion of the offered testimony was

excluded, defendant was allowed to testify that "na-propathy" is a drugless method of treatment of diseases or disorders of the human body discovered or founded about 15 years ago, and that he did not treat cases of obstetrics or of broken bones. He stated the theory of treatment as follows: "We believe that the innate property of ligamentous tissue to shrink up from injury results very frequently in damage to the nerves which go out through the spinal column to the different parts of the body, and thus the impairment to nerves due to this contracting property of the ligamentous tissue results in shutting off the nerves in there, or possibly an irritation of the nerves, so that the organs or parts thus supplied do not act in a normally functioning way." He defined at length the term "ligamentous tissue," and further testified that he treated the ligaments by using manual force upon the bones to which the ligaments were attached, using the prominences of the bones as a lever to stretch the shrunken ligaments, which are for the most part attached to the vertebræ. The witness was also permitted to testify in detail as to the actual condition of several of his patients before treatment and their general appearance and physical condition after the treatment. The undisputed testimony, therefore, is that their later condition was better than the first, and no prejudice or error occurred by the exclusion of merely cumulative evidence on this point.

Dr. Oakley Smith was called in behalf of the defendant and testified that he had charge of a school teaching "napropathy" in Chicago, which was the only school of the kind in the United States; that the system was founded by him about 15 years ago; and that he had formerly been a chiropractor. When asked to state the difference between chiropractic and osteopathy, on the one hand, and napropathy, on the other, the witness testified: "I will do the best I can. As far as I can see, they are opposite in this regard: The chiropractor works on the basis of bones out of place, works on the basis of

putting them back in place, makes up his treatment as he goes along; in other words, without chart or bookkeeping. The napropath says we should do all work with a chart, work on the basis it's a ligatight, not bone out of place; a ligatight is a shrunken ligament, and on the basis we should stretch those shrunken ligaments. That is all. Q. And you might state the osteopath theory. A. Without any accusations against the chiropractor, the chiropractor is the same as the osteopath, as far as I can see in theory and action. That is all."

The court sustained an objection to the question as to how long the system of treating disease by manipulating the spinal column has been used. Defendant offered to show by the witness "that the practice of manipulating the spine has been in use in the world as far back as the history of medicine can be traced, that it has been specially in use in Bohemia, where he has studied and observed, and that it is used in families and has been for more than one hundred years, and that it is in frequent use in the United States in families, especially in families of those who have recently come from Europe, as a household remedy," which permission was refused as not tending to prove or disprove any issue in the case. This is assigned as error. The evident object of the tendered evidence was to bring the practice of the treatment within the exception of the statute which permits "the administration of ordinary household remedies." Even if received, the testimony would not, in our opinion, have brought the case within the exception. Use in Bohemia or in the families of immigrants from Europe of rubbing or manipulation of the spine would not establish that the practice of "napropathy" as described by the witness is an "ordinary household remedy" in this country. The ruling on this point was not erroneous.

Defendant requested instructions, in substance, to the effect that the law permits any person to treat diseases or physical ailments of others through the administration of household remedies, and that by such administra-

tion is meant the use of any agency "such as massage or the exercise of the muscles or nerves by external physical manipulation, when such use of either or any of such agencies is frequently applied by members of a family or household in which one may be suffering some physical or mental ailment, or by neighbors, or by any other person called in for advice for such ailments," etc. The refusal of the court to so instruct the jury is assigned as error. We think these instructions were properly refused. It has been pointed out that neither the evidence offered and excluded, nor that received, would establish that the defendant administered ordinary household remedies, within the meaning of the statute.

It is also assigned that it was error for the court to refuse to instruct the jury that it was the duty of the state board of health to provide means whereby persons desiring to practice drugless healing by the system of "napropathy" could take an examination as to their fitness to engage in such a system of healing. It is said that to refuse or neglect to afford such an examination is a denial of defendant's constitutional rights and a discrimination against him in favor of practitioners of other schools of medicine. In recent years a number of schools of thought concerning the treatment of diseases have sprung up, mostly concerned with what is known as drugless healing, such as christian science, osteopathy and chiropractic.

The constitutionality of an act forbidding the practice of medicine except by persons licensed by the state board of health was first passed upon in this state in the case of *Gee Wo v. State,* 36 Neb. 241. The statute was again upheld in *State v. Buswell,* 40 Neb. 158. The quoted section defining the practice of medicine was especially considered and was held to be valid.

In *Little v. State,* 60 Neb. 749, which was a prosecution for the practice of osteopathy before the enactment of the statute providing for the issuance of licenses to that class of practitioners, the constitutionality of the

act was again attacked on the ground of being prohibitive in its nature.

The law was again sustained in *Harvey v. State*, 96 Neb. 786, where it was said by Sedgwick, J.: "Some of the questions presented appeal strongly to one's sense of justice, and would be difficult of solution if they were not foreclosed by the statute and the early decisions of this court. * * * This court cannot amend the statutes, nor disregard the early decisions upholding and construing those statutes. The legislature has had ample opportunity to modify the laws, if they are considered harsh, unjust or impolitic, and, not having done so, they must be enforced as the will of the public expressed through its lawmaking powers."

After the law in this state had been so construed, believing that the regular schools of medicine did not possess a monopoly of the skill and knowledge available or necessary to alleviate human suffering, the votaries of these new methods applied to the fountain head, and convinced the lawmaking powers of the state that their respective systems were of value and effect in the treatment of disease. The legislature thereupon supplemented the statute by providing that the practice of osteopathy and chiropractic could lawfully be carried on under certain prescribed regulations. This was the proper and orderly method of proceeding.

There are but few relations in life in which there is a greater feeling of dependence, trust and confidence than in the relation between a patient and his physician. The very use of the title "Doctor" to the average mind implies peculiar skill and knowledge, and invites faith and confidence, and it is entirely proper to protect the public from ignorant or incompetent men or women professing to be competent physicians. Such laws, no doubt, in some cases, and perhaps in this case, prevent a man of greater ability, or better education, than some of those having legal qualifications, from practicing, and seem unjust in isolated cases; but it is impossible to legislate to

Carpenter v. State.

meet every individual case, and some latitude must be allowed in order to attain the necessary and proper object to be attained—the protection of the public from quacks. There may be but a slight difference between the treatment given by osteopathic, chiropractic, or other healers by manipulation, but the state has recognized a distinction between them, and has declared the practice of such arts by specially educated practitioners legal and valid. The requirements for the right to practice either of these schools of drugless healing are not exacting, rigorous or unreasonable, but they are sufficient to exclude the ignorant. Neither does the knowledge or study required, at least in osteopathy, seem to be inconsistent or incompatible with the study of napropathy as described by its' founder or discoverer. We know of no law which would prevent the exercise of the system of napropathy by one who has been licensed to practice osteopathy.

The legislature cannot be expected to anticipate the founding of new systems of thought or methods of healing, and neither can the state board of health be required to anticipate every new idea in the drugless treatment of diseases. The cases cited on behalf of the defendant mainly are distinguishable, either as not involving the point considered here, or as construing statutes different in their terms. A large number of cases bearing on the questions involved may be found in the annotation to *People v. Cole*, L. R. A. 1917C, 822 (219 N. Y. 98), and in notes in former volumes of the series to which this note is supplementary.

We fail to see that any constitutional right of the defendant has been infringed. The judgment of the district court is

AFFIRMED.