STATE OF NEBRASKA, DEPARTMENT OF HEALTH, APPELLEE, V. JOHN HINZE, APPELLANT.

441 N.W.2d 593

Filed June 16, 1989.   No. 87-906.

Douglas Veith, of Veith, P.C., Bertolini, Schroeder and Blount, for appellant.

Robert M. Spire, Attorney General, and Jill Gradwohl Schroeder for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

John Hinze appeals the Douglas County District Court's order finding him in criminal contempt of a prior court order enjoining Hinze from practicing medicine without a license. Hinze was fined $500 and sentenced to 60 days in jail. We affirm.

A judgment of criminal contempt is reviewed by the Supreme Court in the same manner as a criminal case. The review is solely on the record, and the judgment of the trial court will be affirmed if the findings are supported by the evidence. See *In re Contempt of Liles*, 217 Neb. 414, 349 N.W.2d 377 (1984).

On November 10, 1986, Hinze was permanently enjoined from engaging in the practice of medicine without a license issued by the State of Nebraska Department of Health. This injunction was a result of Hinze's having established a "clinic" at which he diagnosed and treated ailments of individuals. The defendant was specifically enjoined from:

> 1. Publicly professing to be a physician or publicly professing to assume the duties incident to the practice of medicine;
>
> 2. Prescribing and/or furnishing medicine for any illness, disease, ailment, injury, pain, deformity, and any physical or mental condition, or treating the same by surgery;

3. Holding himself out to the public as being qualified in the diagnosis or treatment of diseases, ailments, pain, deformity, or any physical or mental condition, or injuries of human beings;

4. Suggesting, recommending, or prescribing any form of treatment for the intended palliation, relief or cure of any physical or mental ailment of any person;

5. Maintaining an office for the examination or treatment of persons afflicted with ailments, diseases, injuries, pain, deformity, or any physical or mental condition of human beings; and

6. Attaching to his name any word or abbreviation indicating that he is engaged in the treatment or diagnosis of ailments, diseases, injuries, pain, deformity, infirmity, or any physical or mental condition of human beings.

These court-imposed prohibitions essentially track Neb. Rev. Stat. § 71-1,102 (Reissue 1986).

The court ordered that the injunction remain in effect until such time as Hinze obtained a license to practice medicine in this state from the Department of Health.

On January 23, 1987, Duane Newland, an investigator for the Bureau of Examining Boards of the Nebraska Department of Health, attended a seminar conducted by the defendant at a Lutheran church in Hastings. Newland and 40 to 50 other people each paid $45 to attend this seminar. The defendant, who was introduced as "Dr. John Hinze," informed the gathering that he would be providing information with regard to homeopathic and naturopathic remedies. He did not explain that he uses the title "Doctor" because he holds a doctorate degree in "pharmacy" from the University of Tennessee and a degree in naturopathy from a Canadian college.

Hinze informed the group that Nebraska did not yet have a licensing procedure for homeopathic or naturopathic treatments. He urged those present to contact their state senators and voice support for such a licensing procedure. Finally, Hinze relayed a few generalities about the practice of homeopathy before opening the seminar to specific questions of the participants.

One woman in attendance told Hinze that her son had been

"run over" by a car and was experiencing seizures. She asked what type of treatment could be used for her son. Hinze advised the mother that the child could be given arnica in a dosage of "30X to 200X." He also suggested that silica could be applied to the scars the child had received.

Another woman asked Hinze about dark circles under her children's eyes. He explained that dark circles under a person's eyes are often associated with poor digestion and allergies. Hinze cited a study in which undigested food apparently was found to cause allergies. The defendant then suggested that the woman give her children fennel, anise, mints, and gentian to help digest proteins.

A third woman stated that she knew children who were infested with pinworms. The defendant suggested that carrots, pumpkin seed, and gentian be used to treat the pinworms.

Another woman attending the seminar told Hinze that her husband suffered from high cholesterol and high blood pressure. The defendant explained that high cholesterol is caused by eating sugar which the liver is unable to process. Hinze suggested that the woman give her husband dandelion root to stimulate his liver.

One seminar attendant told Hinze that she suffered from sinus headaches triggered by smoke, perfume, and pressure. Hinze explained that an acupuncture meridian running through the liver might be a contributing factor to her headaches. He suggested dandelion tea as a remedy.

Finally, Newland told Hinze that he was having kidney problems and was taking medication called Bactrim. The defendant told Newland he could drink water and cranberry juice sweetened with sugar. Hinze said that Bactrim was crystallizing in Newland's kidneys. He also said Newland could use cornsilk and uva-ursi to treat the kidney problems.

Also attending the seminar was Les McGerr. McGerr sells herbs and vitamins and is a business partner of Hinze's. McGerr was at the seminar to take orders for the homeopathic herbs and remedies suggested for the participants' ailments.

Based upon these facts, the district court found Hinze in contempt of court for willfully violating paragraphs 1, 2, 3, 4, and 6 of the injunction against practicing medicine without a

license.

Hinze assigns the trial court's finding him in contempt as error. He argues that he was generally discussing the area of naturopathic medicine at an open, public seminar and that the contempt finding infringes upon his right to freedom of speech.

Hinze initially argues that he did not violate the injunction against practicing medicine without a license. The evidence proves this argument to be without merit.

Paragraph 1 of the injunction prohibits Hinze from publicly professing to be a physician or publicly professing to assume the duties incident to the practice of medicine. Paragraph 3 enjoins Hinze from holding himself out to the public as being qualified in the diagnosis or treatment of diseases, ailments, pain, deformity, or any physical or mental condition, or injuries of human beings.

Hinze violated these prohibitions at his seminar by soliciting participants' ailments, suggesting specific remedies for specific ailments, by informing the group that he had previously treated a similar complaint, and by using the title "Doctor" without explanation of his educational background. When all circumstances are considered, the trial court could find that the defendant willfully led members of the public into believing that he was qualified to diagnose and treat physical ailments. This same conduct also violates paragraphs 2, 4, and 6 of the injunction.

Paragraph 2 prohibits prescribing and/or furnishing medicine for any illness, disease, ailment, injury, pain, deformity, and any physical or mental condition, or treating the same by surgery. Paragraph 4 prohibits suggesting, recommending, or prescribing any form of treatment for the intended palliation, relief, or cure of any physical or mental ailment of any person.

At the seminar, Hinze fielded specific questions on participants' illnesses and ailments. He responded to those questions with specific remedies and at one time included dosages. Hinze discussed reasons behind ailments suffered by members of the audience and explained how the recommended treatment would work. Hinze obviously intended to provide relief for the participants' medical problems. Further, Hinze's

business partner was available to sell the recommended remedies to seminar participants.

Finally, by calling himself "Dr. Hinze," without explaining his educational background, the defendant violated paragraph 6 by attaching to his name any word or abbreviation indicating that he is engaged in the treatment or diagnosis of physical or mental condition of human beings. Hinze argues that his doctorate in pharmacology gives him the "right" to use the title of "Doctor." In *Carpenter v. State*, 106 Neb. 742, 748, 184 N.W. 941, 943-44 (1921), this court explained that "[t]he very use of the title 'Doctor' to the average mind implies peculiar skill and knowledge, and invites faith and confidence, and it is entirely proper to protect the public from ignorant or incompetent men or women professing to be competent physicians."

The evidence establishes that the defendant was not acting as a pharmacist but, rather, as a practitioner of the healing arts. The circumstances surrounding the seminar lead to the conclusion that Hinze referred to himself as a "Doctor" in order to lead members of the audience to believe that he was qualified to diagnose and treat physical ailments.

The trial court's finding that Hinze violated the injunction against practicing medicine without a license is supported by the record.

The final issue for consideration is Hinze's claim that the trial court's finding him in contempt violates his first amendment right to freedom of speech. This contention is without merit.

There exists no vested right to practice medicine; rather, it is a conditional right subordinate to the police power of the State to protect and preserve the public health. See *Reisinger v. Com., State Bd. of Med. Ed., etc.*, 41 Pa. Commw. 553, 399 A.2d 1160 (1979), citing *Watson v. Maryland*, 218 U.S. 173, 30 S. Ct. 644, 54 L. Ed. 987 (1910).

> As long as the requirements of learning, skill and examination for obtaining a license to practice medicine bear a direct, substantial and reasonable relationship to the practice of medicine, a Naturopath or anyone else intending to practice the act of healing can be required to meet the standards set for the medical profession.

*Reisinger, supra*, 399 A.2d at 1164, citing *Stuart v. Wilson*, 211

F. Supp. 700 (N.D. Tex. 1962), *aff'd* 371 U.S. 576, 83 S. Ct. 547, 9 L. Ed. 2d 537 (1963).

Many courts have ruled that the State's compelling interest in regulating the health and welfare of its citizens outweighs any incidental infringement of the free speech of individuals who are not licensed to practice medicine. In *People v. Jeffers*, 690 P.2d 194 (Colo. 1984), the defendant appealed an order convicting him of practicing medicine without a license. The defendant claimed that prohibiting him from practicing medicine without a license "chilled" forms of speech protected by the Constitution of the United States.

The Colorado Supreme Court found that the State could, pursuant to its police power, regulate the practice of medicine and prohibit unlicensed people from providing medical treatment. The court explained that "[t]he practice of medicine itself is not protected by the first amendment. Therefore, reasonable regulation of medical practice does not conflict with first amendment protections." *Id.* at 198.

In *People v. Ray*, 119 Ill. App. 3d 180, 456 N.E.2d 179 (1983), the defendant claimed that his conviction for practicing medicine without a license violated his right to freedom of speech. The Illinois court concluded that any infringement of Ray's freedom of speech was incidental and was outweighed by the State's compelling interest in the regulation of the practice of medicine to preserve and protect the health, safety, and welfare of the citizens.

The California Court of Appeal considered a case in which the first amendment was argued to protect one already practicing medicine. In *Shea v. Board of Medical Examiners*, 81 Cal. App. 3d 564, 146 Cal. Rptr. 653 (1978), a medical doctor's license to practice medicine was revoked after he engaged in monologues with hypnotized patients. During the monologues, Shea described various sexual acts in very explicit detail and in graphic nonmedical terms. The court found that it is within the police power of the State to enact laws to protect the health, safety, and welfare of society; that the constitutional protection afforded to speech applies only to the extent that it does not impair the patient-physician relationship; that the challenged speech was outside the ambit of constitutional

protection; and that the physician's argument that revocation of his license under such circumstances would have a " 'chilling effect upon the right of freedom of speech and the right to practice medicine' " had no merit. *Shea, supra* at 577, 146 Cal. Rptr. at 661.

The court further stated that assuming, for the purpose of argument only, that the constitutional rights of the physician were infringed, "the First Amendment is not an umbrella shielding the type of verbal conduct in which the doctor engaged. It does not insulate the verbal charlatan from responsibility for his conduct; nor does it impede the State in the proper exercise of its regulatory functions." *Shea, supra* at 577, 146 Cal. Rptr. at 662.

Finally, in *Idaho Ass'n, etc. v. U. S. Food and Drug Admin.*, 582 F.2d 849 (4th Cir. 1978), *cert. denied* 440 U.S. 976, 99 S. Ct. 1547, 59 L. Ed. 2d 795 (1979), the U.S. Court of Appeals for the Fourth Circuit considered the first amendment claims of several naturopathic practitioners and students. The court found that the plaintiffs had failed to state a cause of action upon which relief could be granted. In making this finding, the court stated:

> We conclude that the naturopaths' various constitutional claims depend on a single underlying contention: that a state must recognize naturopathy as a discipline distinct from the orthodox practice of medicine whose practitioners are entitled to licensing requirements different from those imposed on other physicians. . . . In light of the decisions of the Supreme Court that we have reviewed, we find that the naturopaths' basic claim has been firmly, repeatedly, and authoritatively rejected.

*Idaho Ass'n, supra* at 853-54.

It is clear that Hinze has no constitutional right to practice medicine without a license. In the exercise of its police power, the State of Nebraska has chosen not to recognize naturopathy as a legitimate branch of medicine. Until the Legislature of this State reverses that position by establishing a licensing procedure, Hinze is enjoined from practicing naturopathy in any of its various forms. Any infringement on Hinze's freedom of speech created by this injunction is, at most, incidental and is

outweighed by this State's compelling interest in protecting the health and welfare of the citizens of Nebraska. See, *Carpenter v. State*, 106 Neb. 742, 184 N.W. 941 (1921); *Prendergast v. Nelson*, 199 Neb. 97, 256 N.W.2d 657 (1977); *Gee Wo v. State*, 36 Neb. 241, 54 N.W. 513 (1893).

The decision of the district court finding Hinze in contempt of court is clearly supported by the evidence. Hinze's conviction and sentence are affirmed.

AFFIRMED.