REQUESTED BY: Merton L. Dierks, Senator Nebraska State Legislature
You have requested an opinion from this office regarding the constitutionality of LB 953. This proposed legislation would redefine the term "funeral establishment" to mean "a place of business devoted to the care and preparation for burial, disposition, or cremation of dead human bodies, and for the purpose of conducting and arranging funeral services therefrom." The current definition, found at Neb. Rev. Stat. §71-1301(9), provides instead that a "funeral establishment" is "a place of business . . . devoted to the care and preparation of dead human bodies for burial, disposition, or cremation or to conducting or arranging funeral services for dead human bodies." (Emphasis added). You state that the current statute has been interpreted by the Department of Health and Human Services Regulation and Licensure to mean that a funeral establishment need not have a preparation or embalming room. You also state that LB 953 would replace the current definition with the statutory definition of funeral establishment which existed prior to 1993.
You have asked whether the State has authority under the state and federal constitutions to enact LB 953 if the proposed change would restrict the creation of new businesses or expansion of existing businesses legally operating under the current statute. As you have asked our general opinion as to the constitutionality of the proposed legislation, our response to your request must necessarily also be general in nature.
The answer to your question depends on whether LB 953 is found to be a valid exercise of the State's police power. The Nebraska Supreme Court has held that the right to conduct a lawful business is a constitutionally protected right. State v.Copple, 224 Neb. 672, 401 N.W.2d 141 (1987); Gillette Dairy, Inc.v. Nebraska Dairy Products Board, 192 Neb. 89, 219 N.W.2d 214
(1974); Lincoln Dairy Co. v. Finigan, 170 Neb. 777,104 N.W.2d 227 (1960). However, that right is not absolute and may be curtailed by a proper exercise of the police power of the State to protect the public health. State v. Hinze, 232 Neb. 550,441 N.W.2d 593 (1989). Generally, when a fundamental right or suspect classification is not involved in the legislation, a legislative act is a valid exercise of the police power if the act is "rationally related to a legitimate state interest." State v.Champoux, 252 Neb. 769, 772, 566 N.W.2d 763, 765 (1997). AccordState ex rel. Dept. of Health v. Jeffrey, 247 Neb. 100,525 N.W.2d 193 (1994).
The extent of the State's power to regulate a business or occupation was explained by the Nebraska Supreme Court inGillette Dairy, Inc., as follows:
 Whether a business is charged with such a public interest as to warrant its regulation is a legislative question in which the courts ordinarily will not interfere. The Legislature may not, however, under the guise of regulation, impose conditions which are unreasonable, arbitrary, discriminatory, or confiscatory. Such regulations must be reasonable considering the nature of the business and not such as would prevent the carrying on of the business.
192 Neb. at 96-97, 219 N.W.2d at 219-20.
In Gillette Dairy, Inc., the Nebraska Supreme Court found unconstitutional statutes which regulated the price of dairy products because the State failed to demonstrate that price controls were needed to insure a wholesome product for the public. As stated by the court, "[M]easures adopted by the Legislature to protect the public health and secure the public safety and welfare must have some reasonable relation to those proposed ends . . ." Id. at 97, 219 N.W.2d at 220.
State regulation of funeral establishments has generally been upheld. As stated by one authority, "[T]he business of operating a mortuary, funeral home or parlor, or undertaking establishment, or of embalming, is one of a public or quasi-public nature, closely related to the health, safety, and general welfare of a community, and is, therefore, a business which, under the police power, may be subjected to reasonable regulation and control by statutes or municipal regulations." 38 Am. Jur. 2d FuneralDirectors and Embalmers, § 3 at 75-76 (1968).
You have stated in your request letter that the proposed amendment to the definition of "funeral establishment" is intended to make clear that funeral establishments are places of business at which both the preparation of dead human bodies for burial or other disposition and the conducting and arranging of funeral services occur. We assume, for purposes of this discussion, that the amended statute would be so interpreted. The issue raised then with regard to LB 953 is whether there is a rational and reasonable relationship between the requirement that each funeral establishment have an embalming or preparation room and the public welfare.
The purpose of the requirement is not set out in the statute itself and we have not been provided with any information concerning its purpose. We presume the bill's proponents believe the requirement is needed to preserve the public's health and safety, but are unaware of their specific concerns. It may be somewhat helpful to add a statement of public purpose to the bill and to articulate the specific concerns at issue in the committee records and floor debate. However, mere statements as to public purpose would not sustain the statute against constitutional challenge if there cannot be demonstrated "a clear, real, and substantial connection between the assumed purpose of the enactment and its actual provisions." Eckstein v. City ofLincoln, 202 Neb. 741 at 744, 277 N.W.2d 91 (1979).
We are unable to predict with any certainty whether the legislation would be upheld by our courts. Unless a rational relationship between the amendment and the public health can be established, LB 953 is constitutionally suspect. We do note, in this regard, that a "branch establishment," as currently defined at Neb. Rev. Stat. § 71-1301(4), is not required to have an embalming room on its premises and LB 953 does not amend that definition. It appears to us that a successful defense of LB 953 would depend not only upon the articulation of a rational relationship between the embalming room requirement for funeral establishments and the public health, but also upon a valid explanation as to why the same health concerns are not applicable to branch establishments. At this time, we have insufficient information to address that issue.
Sincerely,
 DON STENBERG Attorney General
 Lynn A. Melson Assistant Attorney General
Approved:
Don Stenberg 
Attorney General